In the Matter of the Estate of HELEN S. WIGGINS, Deceased.

Fourth Department, October 31, 1974.

*Louis J. Lefkowitz, Attorney-General (Eugene A. Panfil, Ruth Kessler Toch* and *Joseph J. Ricotta* of counsel), for appellant.

*Charlotte Smallwood Cook* for Mary Hull, respondent.

SIMONS, J. In 1948 Fred and Helen Wiggins executed a joint will. Mr. Wiggins died in 1948. In 1968 and 1969 Helen Wiggins executed two codicils changing the testamentary disposition of her estate. She died in 1969.

The issue before the court is whether the codicils were effective to alter the dispositions contained in the will of Mr. and Mrs. Wiggins. Upon a petition requesting reprobate of the will, probate of the two codicils and construction of the conflicting provisions contained in the instruments, the Surrogate admitted

both the will and the codicils to probate and held that the bequests in the codicils were to be given effect, finding that the will did not constitute a contract between the two testators for joint disposition of their estates.

The will provided that the estate of the first to die was to pass to the survivor and upon the death of the survivor, certain specific legacies totaling about $1,800 were to be paid. The residue was bequeathed to the First Baptist Church of Warsaw, New York, for scholarships and general church purposes. The two codicils bequeathed specific legacies totaling approximately $27,000.

At the time of Fred Wiggins' death the value of the estate was approximately $60,000. The couple had no children and Mrs. Wiggins had been employed during their marriage and had contributed some of her earnings to their joint property. In addition, Mrs. Wiggins had inherited property worth about $27,000 from her relatives, prior to her husband's death. It is alleged that the value of the joint estate has increased as the result of careful management and the predictable influence of inflation during the 21-year period between Mr. Wiggins' death and the death of his wife and now exceeds $200,000.[1]

The positions of the Surrogate and the dissent are grounded upon paragraph *Second*[2] of the will which provided in part: "the survivor of us shall have the full use and the power to consume the principal of the decedent's estate during his or her lifetime, *except the right to dispose of the same by Will.*" (Emphasis added.) The Surrogate, noting that this paragraph

---

1. The property in issue was derived from the original estate in 1948. The dissent refers to it as "after-acquired property", but it is after-acquired only in the sense that it reflects and includes appreciation in value and savings from the earnings of the estate after the husband's death.

2. The entire paragraph reads:

"It is the will and desire of each of us and each gives, devises and bequeaths to the other, upon the death of either of us, all of the property, both real and personal and where so ever the same may be situate, of the deceased party for the use of the surviving party so long as the said survivor shall live, and the said survivor shall have the right to invade the principal or corpus of the *decedent's estate,* both real and personal, as he or she shall in his or her own discretion require for his or her proper maintenance, support and comfort during the survivor's lifetime, and the survivor shall have the full power and authority during his or her lifetime, to sell and transfer any and all real and personal property of which the decedent died seized, and the said survivor may invest the same and the proceeds thereof, without regard to the laws for the investment of trust funds. It is the mutual wish and desire of each of us that the survivor of us shall have the full use and the power to consume the principal of *the decedent's estate* during his or her lifetime, *except the right to dispose of the same by Will.*" (Emphasis added.)

referred to the "decedent's estate" rather than "our property", held that no contract was created by the joint will and that disposition was restricted only with respect to the estate of the first testator to die. The dissent relies upon the same language but, conceding a contract, contends that this language limits its application to the assets of both parties as they existed at the time of Mr. Wiggins' death in 1948.

We hold that the parties entered into a binding contract for the distribution of their collective assets, that Mrs. Wiggins' promised performance became irrevocable upon the death of her husband in 1948 and that the entire estate of the two parties as it existed at the time of Mrs. Wiggins' death is to be distributed in accordance with the will, the bequests contained in the later codicils notwithstanding.

The joint will contains familiar indicia of the parties' intention to make a contract and states reciprocal promises for the disposition of the parties' collective property binding upon the survivor. The entire context of the instrument is plural. Thus, it provided that "we" make this "our" last will devising "all our property", stated that it was the will of "each one of us and both of us" and employed similar language throughout (see *Rastetter* v. *Hoenninger*, 214 N. Y. 66, 72). The will does not contain an absolute gift of property to the survivor but only life use of the joint estate (see *Rubenstein* v. *Mueller*, 19 N Y 2d 228, 232; *Rich* v. *Mottek*, 11 N Y 2d 90, 94; *Tutunjian* v. *Vetzigian*, 299 N. Y. 315, 320; and cf. *Matter of Zeh*, 24 A D 2d 983, affd. 18 N Y 2d 900). Furthermore, paragraph *Third* provided: "it is the will and desire of each of us and our mutual desire that, upon the death of whichever one of us that survives the other, that all of the remainder of our property, either real or personal * * * shall be divided and we give, devise and bequeath the same as follows".

This language brings the instrument well within the form of those wills which the courts have held to be contracts providing for a joint disposition of the parties' collective assets. Having found that, the governing rules are easily applied. The reciprocal promises of the will are irrevocably binding on the survivor after the death of one of the testators. Mrs. Wiggins was at liberty to use the property during her lifetime as her own and as she saw fit but she could not alter the testamentary disposition contained in the will (*Rich* v. *Mottek, supra*, p. 93; *Rastetter* v. *Hoenninger, supra*, p. 73) and if she attempted to do so after the death of her husband, the beneficiaries of the will could maintain an action in equity to enforce its terms. While this is

an appeal from a construction proceeding and not an equitable action, we may not recognize rights here which must later be undone by separate action in equity.

The dissent would construe the phrase " all of the remainder of our property " found in paragraph *Third* to mean only the property owned by testators, either jointly or singly, at the death of the first of them and that Mrs. Wiggins' property should be bound by the contract only to the extent of its value at the time of her husband's death in 1948. This interpretation of the will is not only in conflict with the language it relies upon from paragraph *Second* but it also construes an isolated phrase in a way which is at odds with the testamentary plan established by the whole will and which does violence to the concept of joint wills by destroying the mutuality of the parties' promises. We should not adopt such an extraordinary interpretation without a clear indication in the instrument that it represents the intention of the testators. The will is not to be construed from the reading of a single word or sentence, but " from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances " (*Matter of Fabbri*, 2 N Y 2d 236, 240).

The manifest purpose of the parties was to provide for the security of the survivor and to remember the legatees, principally the church, after the last death. Mrs. Wiggins' codicils recognized this commitment because the provisions of the codicils did not alter the original plan significantly, they merely attempted to increase the size of some of the specific legacies[3] and add a few more. No doubt her actions were prompted by the increase in the value of the estate but this was a natural consequence of the joint will in view of the lengthy interval separating the two deaths. Such a possibility is a necessary consideration in all estate planning and may not justify altering the fixed disposition of the assets. The problems the dissent anticipates by a remarriage of the surviving spouse are matters within her control and easily resolved by proper planning. The imprecision of its proposed rule limiting the operation of the will to those assets existing or contemplated at the time of the will's execution would only magnify such difficulties and others frequently arising from the use of joint wills.

Finally, the dissent contends that equitable considerations support the result it proposes. It is not clear what equitable considerations mandate such a strained construction of the will.

3. The similarity of the names of the specific legatees in the will and some of those named in the codicils 20 years later would suggest that the subsequent legatees were heirs as survivors of those originally named.

The testamentary plan to which we give effect is precisely that agreed upon by the parties, a plan by which the great proportion of the estate goes to the church, with friends, remote relatives and other charities receiving relatively small financial gifts. The facts that Mrs. Wiggins was not profligate with the funds and that there was no fraud on her part or unjust enrichment do not change her promise or alter the terms of the contract contained in the joint will.

The will and the codicils, having been duly executed, should be admitted to probate but the codicils were without legal effect to alter the terms of the will, and the Surrogate's construction of the instruments to the contrary should be reversed.

CARDAMONE, J. (dissenting). The question presented on this appeal is whether property acquired by a surviving wife *after* the death of her husband is impressed with a trust for the benefit of those provided for under the terms of the joint will. In my view, law and equity both require that this question be answered in the negative.

A joint will is an instrument that when viewed solely as a will is revocable at pleasure, but when considered as a contract, if supported by adequate consideration, may be enforceable in equity (*Rastetter* v. *Hoenninger*, 214 N. Y. 66, 71). The majority have concluded that this joint will contains a contractual promise which binds the disposition of the after-acquired property of the surviving spouse. I disagree. We all agree that there is a joint will between decedent husband and his wife, who survived. But its language and the surrounding circumstances do not clearly spell out any promise to have its terms binding on more than the property contemplated by the parties at the time of the death of the first of them. On the contrary, the last sentence in the second paragraph of the joint will expresses an intent to bind merely the decedent's estate as follows: "It is the mutual wish and desire of each of us that the survivor of us shall have the full use and power to consume the principal of the *decedent's estate* during his or her lifetime, except the right to dispose of the *same* by Will" (emphasis supplied). Similar references to the estate of the decedent are contained in the first sentence of the same paragraph.

It has long been settled that the mere execution of joint or mutual wills does not by itself establish a contract prohibiting alteration or revocation without clear and convincing evidence that such a provision was made (*Rubenstein* v. *Mueller*, 19 N Y 2d 228, 232; *Oursler* v. *Armstrong*, 10 N Y 2d 385, 389; *Edson* v. *Parsons*, 155 N. Y. 555, 568; *Matter of Zeh*, 24 A D 2d 983, affd.

18 N Y 2d 900). In this case, the promise related to the estate of the decedent which equity should enforce, but there exists no clear and convincing evidence of a promise binding upon after-acquired property of the survivor (cf. *Tutunjian* v. *Vetzigian,* 299 N. Y. 315). In *Tutunjian,* for example, the will expressly referred to after-acquired property. Absent such kind of evidence equity will impress a trust only " as to property received by [the survivor] under the joint will " (*Rubenstein* v. *Mueller,* 19 N Y 2d 228, 233; *Rastetter* v. *Hoenninger,* 214 N. Y. 66, 74, *supra*).

The majority's holding seems unduly inflexible, especially when it is bottomed on such slim proof of a contractual promise.

With respect to equitable considerations, the Attorney-General, on behalf of the charitable residuary beneficiary, petitioned the Surrogate to exercise its equitable power to impress a trust upon the proceeds of the codicils. The elements which would compel a court to impress such constructive trust, e.g., fraud and unjust enrichment are not present in this case. The two codicils of the surviving wife which are at issue here do not alter specific bequests of the joint will, nor may they be construed as an attempt by the survivor to enrich herself or her relatives to the detriment of the decedent husband or his relatives. In fact, the most substantial additional bequest is one of $20,000 to a cousin of the husband. The codicils carry out the intent of the joint will and do not diminish the gift to the residuary legatee. It receives, giving effect to the codicils, a substantially larger bequest (approximately three times as much) than it would have received at the time the joint will was executed. Nor is there any indication that the survivor wife abused a confidential relationship. There must be a " sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed " (*Matter of Fabbri,* 2 N Y 2d 236, 240). Thus, the intent of the joint will is to be gathered not merely from the language of the instrument itself, " but also from the conditions and circumstances extrinsic to it " (*Spencer* v. *Childs,* 1 N Y 2d 103, 107). Considering the expressed intent of the makers of the joint will to leave modest but significant bequests to their only relatives and the long passage of time during which the value of those bequests depreciated with the value of money, it is highly unlikely that the decedent husband would have disposed of his property differently had he contemplated the codicil modifications made in favor of his and his wife's relatives. It is consonant with sound construction then, considering these

facts, conditions and circumstances, to grant the codicils legal effect.

Subsequent to the husband's death the size of the estate increased, due solely to the surviving wife's prudent investments and frugal life style. Thus, on the facts recited, it is plain that the surviving wife committed no fraud, nor was she guilty of self-enrichment. On the contrary, to deny effect to the codicils of her will would unjustly enrich the charitable beneficiary at the expense of the living relatives of both the decedent husband and the surviving wife as makers of the joint will. This result the Surrogate, in the exercise of his equitable power, properly refused to carry out. To illustrate the inequity of the rule adopted by the majority, if the surviving wife had remarried after her husband's death, had children and then inherited a large estate from her second husband, it would be plainly unjust and inequitable to distribute the after-acquired property from the second husband in accordance with the prior joint will.

The judicial policy has been one of great reluctance to restrict the ambulatory nature of a will — be it joint or mutual — absent convincing evidence of such a clear intent (see *Oursler* v. *Armstrong*, 10 N Y 2d 385, 389, *supra*; *Edson* v. *Parsons*, 155 N. Y. 555, 571, *supra*; *Matter of Zeh*, 24 A D 2d 983, affd. 18 N Y 2d 900, *supra*). A proper rule for the disposition of the after-acquired property and one in accordance with the intent of the joint will would impress a trust on the surviving wife's property only to the extent of its value at the time the husband died (*Olsen* v. *Olsen*, 189 Misc. 1046). For these reasons I dissent and vote to affirm the judgment of the Surrogate.

Marsh, P. J., Mahoney and Del Vecchio, JJ., concur with Simons, J.; Cardamone, J., dissents and votes to affirm the decree in an opinion.

Decree modified in accordance with opinion and as modified affirmed with costs to respondent payable out of the estate.