In the Matter of the Accounting of JOHN A. READ, as Surviving Trustee of the Trusts Created under the Will of ALICE E. WILHELM, Deceased. CARL WILHELM et al., Appellants; JOHN A. READ et al., Respondents.

Fourth Department, December 9, 1977

APPEARANCES OF COUNSEL

*Kavinoky, Cook, Hepp, Sandler, Gardner & Wisbaum (Allan R. Lipman* of counsel), for Carl Wilhelm, appellant.

*Hodgson, Russ, Andrews, Woods & Goodyear (Stephen H. Kelly* of counsel), for Alice Newton and others, appellants.

*Phillips, Lytle, Hitchock, Blaine & Huber (David K. Floyd* of counsel), for John A. Read, respondent.

*Torrance Brooks,* guardian ad litem for Michele Malone, an infant, respondent.

*Frederick J. Gram,* guardian ad litem for Amy Wilhelm and others, infants, respondents.

### OPINION OF THE COURT

Simons, J.

Alice Wilhelm died testate in 1962 without lineal descendants. Her will provided that the assets of her estate would be distributed to 13 named beneficiaries; 9 nieces or nephews of her deceased husband, her brother (who predeceased her), her brother's daughter and 2 second cousins of testatrix. The estate was to be divided into equal shares and placed in separate trusts, known as "primary" trusts. One share was set aside for each niece or nephew, except that testatrix' niece took her share and also that of her deceased father, and one share was to be divided between the two cousins for their lives. The issue to be decided on this appeal is the manner of disposition of the assets of these "primary" trust funds upon the death of the primary beneficiaries. Specifically, the parties seek a construction of paragraph VI of the testatrix' will insofar as it provides for the creation of various "subtrusts" upon the death of testatrix' nephew, Richard Wilhelm, the beneficiary of one of the primary trusts.

At the time of his death, Richard Wilhelm left a son, Carl,

who had no children, a daughter, Carol E. Malone, who had three children, and five children of a deceased son, Richard Wilhelm, Jr. The parties to the construction proceeding assumed that the principal and income of Richard's primary trust were to be distributed to his issue per stirpes; one third to establish a subtrust for Carol E. Malone, one third to establish a subtrust for Carl Wilhelm, and the remaining one third to be divided equally among the five children of Richard Wilhelm, Jr. and placed in subtrusts for their benefit. The Surrogate held, however, that the Richard Wilhelm primary trust was to be distributed per capita in 10 shares with Richard's two surviving children, Carl Wilhelm and Carol E. Malone, sharing equally with his 8 grandchildren. Appellants moved to "modify" the Surrogate's construction of the decree but the Surrogate treated the motion as one to reargue and denied the application. Carl Wilhelm appeals the order construing the will and the order denying modification.

After the Surrogate's decision was announced, the prospective "subbeneficiaries" of another primary trust which has not yet terminated, the trust of George Wilhelm, moved to intervene and to reargue the Surrogate's construction of the will (see CPLR 1012, subd [a]). These movants pointed out that the decision had a substantial effect on their prospective rights and was inconsistent with a prior per stirpes distribution which had been made of yet another primary trust created by paragraph VI of Alice Wilhelm's will, the trust of Walter Wilhelm who died in 1967. The movants' application to intervene and reargue was denied and they also appeal.

The governing language for all these trusts and subtrusts is found in paragraph VI of Alice Wilhelm's will which provides:

"(1) Should a primary beneficiary * * * survive me and be survived by issue who were in being at the time of my death or, failing such issue, shall be survived by next-of-kin who were in being at the time of my death, the principal of his or her primary trust shall, at the time of his or her death, be sub-divided into as many parts or shares as is the number of such issue or of such next-of-kin, as the case may be. Each such sub-divided part or share shall constitute a separate trust (hereinafter referred to as a 'sub-trust'), and the person for or with respect to whom such trust is set up shall be hereinafter referred to as a 'sub-beneficiary'."

"(2) As to the sub-trusts set up for or with respect to such issue, the amounts thereof shall be equal but, as to the sub-

trusts set up for or with respect to such next-of-kin, the amounts thereof shall be in the same relative proportions as such next-of-kin would be entitled to receive if the primary beneficiary whose primary trust is being sub-divided were, at the time of his or her death, the absolute owner of the principal of such primary trust and distribution thereof were made in accordance with the then existing laws of the State of New York relating to the distribution of personal property in the case of intestacy, but to and between such next-of-kin only."

■ Since the primary beneficiary of the trust under consideration, Richard Wilhelm, Sr., was survived by issue in unequal degrees of consanguinity, there is a statutory presumption that distribution is to be per stirpes, "unless a contrary intention is expressed" in the will (EPTL 2-1.2).* The Surrogate found evidence of such contrary intent in the will and decreed that the trust of Richard Wilhelm be distributed per capita to 10 subtrusts for Richard Wilhelm's issue. This appeal followed.

■ We must construe the will, not from the reading of a single word or sentence, but from a sympathetic reading of the will in its entirety *(Matter of Fabbri,* 2 NY2d 236, 240), bearing in mind that the court should not adopt an extraordinary interpretation of the instrument's language without a clear indication that such an interpretation expresses the intention of the testatrix *(Matter of Wiggins,* 45 AD2d 604, 607, affd 39 NY2d 791). Manifestly, this will was prepared by attorneys. We may assume that it was prepared with care and with full knowledge of the statutory presumption of per stirpes distribution so that any contrary direction would be stated clearly. We find no expression to rebut the statutory presumption.

Alice Wilhelm's will, examined as a whole, represents a unified plan for distribution of the substantial assets of her estate equally among her relatives with the purpose of preserving principal for all their descendants for as long as the then existing restrictions against unlawful perpetuities permitted. Thus, upon testatrix' death, the will provided for 11 primary trusts, 10 for nephews and nieces (Richard Wilhelm, Sr. was one of these), and one to be divided between testatrix'

---

* This same presumption was contained in section 47-a of the former Decedent Estate Law which governed testatrix' will at the time of her death.

second cousins for the period of the cousins' lives. After the cousins' deaths the trust assets were to be distributed ratably to the trusts existing at that time. The primary trusts were, upon terminating, to be divided equally for the issue of the primary beneficiaries and the funds placed in subtrusts. There was only one exception to this general plan, the trust for a nephew of testatrix' husband, Edwin Wilhelm, who was 56 years of age when the will was executed in 1949 and 69 years of age when testatrix died. Edwin Wilhelm had no children and testatrix provided different treatment after his death for the primary trust fund created in his name, apparently wishing that his wife not inherit the trust from him. Upon Edwin's death, as with the half shares bequeathed to testatrix' cousins, the trusts were to be distributed to the remaining trusts for the other nieces and nephews. Thus, contrary to the Surrogate's finding, all the nieces and nephews of testatrix and her husband shared equally in the estate, with the one exception that Edwin Wilhelm's interest terminated at his death.

Alice Wilhelm was not survived by any close relative. It is evident from her will, however, that she intended to favor those related to her in the nearest degree, a disposition consistent with per stirpes distribution. Thus, the primary trust went to the second generation nieces and nephews and the subtrusts went to the third generation. The will did not provide, however, for automatic distribution to fourth generation heirs when the subtrusts terminated. Instead, the subbeneficiaries were granted a power of appointment over the trust funds and, if they failed to exercise that power of appointment, the distribution was not to issue but to next of kin according to the law of intestate succession, the subbeneficiary's wife sharing with the issue of the subbeneficiary. Thus, the property was distributed to those closer to the testatrix or as the subbeneficiary might prefer to appoint. Additional evidence of this same intent of testatrix to favor her nearest relatives may be found also in her gift of only a life use to her two cousins, the remainder after their death to be distributed to the closer relatives rather than the cousins' issue, if any. It is apparent that the testatrix' plan was conceived to favor the nieces and nephews, those closest to her, in the same way, and the exceptions for the more remote cousins and for Edwin Wilhelm do not alter this obvious purpose. After the death of the nieces and nephews the disposition of the trusts for the benefit of the next generation was to be equal as far as the

laws permitted. In contrast, the Surrogate's per capita construction of the will runs counter to these indicia of intent and favors those generations farther removed from testatrix by giving them greater proportional shares of the subtrusts.

Finally, nothing in the will suggests that testatrix intended that the sequence of deaths, either that of Richard, Jr. before his father or that of any other subbeneficiary before a primary beneficiary, should penalize the remaining subbeneficiaries by diminishing their share of the primary trust to the advantage of the fourth generation great grandnieces and great grandnephews.

The Surrogate, in deciding on a per capita distribution, was impressed by the fact that the subbeneficiaries were limited to those issue in being at the time of the testatrix' death. He reasoned that this was contrary to a general stirpital distribution that would result in all issue sharing equally. But the restriction does not indicate any such intent. Obviously, it was placed in the will to satisfy the two lives in being requirement of the rule against perpetuities and the rule against the suspension of the power of alienation, as the rule then existed. Nothing more can be inferred from it. Further than that, however, the limitation evidences no intent to support a per capita distribution as opposed to a per stirpes distribution. The limitation foreclosing inheritance to those born after the death of testatrix applies whether per capita or per stirpes distribution is contemplated. It supplies no evidence of a preference by testatrix for either method of distribution.

The Surrogate also found evidence of intent for per capita construction from the provision in paragraph VI [2] of the will which provides that the shares of the issue should be "equal". However, terms such as "equal shares" when used in conjunction with the term issue have been held to indicate an intent, not to overcome per stirpes distribution, but to require it (*Matter of Durant*, 231 NY 41, 46-47; *Matter of Farmers' Loan & Trust Co.*, 213 NY 168; *Matter of Union Trust Co. [Detmold]*, 170 App Div 176, mod 219 NY 537, affd 220 NY 657). Significantly, these cases were decided before the enactment of section 47-a of the Decedent Estate Law, at a time when the common-law rule held that use of "issue" in a will presumptively indicated the testator's intent that distribution be per capita. Use of words such as "equally" was held by the

courts to overcome this common-law presumption of per capita distribution. This language, therefore, should hardly serve to overcome the presumption of stirpital distribution now contained in the statute.

█ Finally, the Surrogate stated that since the primary trusts were to be divided into subtrusts of as many shares as "the number of such issue" of the primary beneficiary (par VI [1]) and the subtrusts were to be of equal shares to "such issue" (par VI [2]) the references to such issue meant all issue of the primary beneficiary in any degree as limited to survivors of the testatrix. The argument assumes that the limitation on the clause overcomes the presumed intent of stirpital distribution and, as we have said, we find no evidence that it does. Furthermore, we do not agree that the alternative gift in paragraph VI to next of kin supported an inference of intent to distribute per capita. The laws of intestate distribution are per stirpes in concept and the provisions are entirely consistent. The Surrogate reasoned that this per stirpes gift to next of kin was in contrast with the gift to issue and, therefore, the gift to issue was intended to be per capita; but there is no reason to interpret these alternative gifts as conflicting.

We find that the statutory presumption of per stirpes distribution under the will is not overcome. Accordingly, there is no need for us to consider the issues of collateral estoppel arising from judicial settlement of the per stirpes distribution of the primary trust of Walter Wilhelm, the validity of the consent agreement executed by all the adult issue, nor the court's denial of intervention to the subbeneficiaries of George Wilhelm. The denial of the motions to modify, erroneously considered by the trial court as motions to reargue, was an improper exercise of discretion. However, since our decision resolves the appeal in favor of the appellant, the motions to modify and to intervene should be dismissed as moot.

The decree construing the will should be reversed.

MOULE, J. P., CARDAMONE, HANCOCK, JR., and DENMAN, JJ., concur.

Decree unanimously reversed on the law with direction to enter decree in accordance with opinion by SIMONS, J., with costs payable from the estate to all parties filing briefs.

Appeal from order entered March 4, 1977 dismissed as moot.