OPINION OF THE COURT
Bertram R Gelfand, S.
In this proceeding, petitioner seeks a determination declaring invalid certain Totten Trusts established by the decedent prior to her death. These Totten Trusts aggregate, as of the date of decedent’s death, the sum of $15,389.18. It is petitioner’s contention that the Totten Trusts were established in violation of the terms of the joint will of decedent and her predeceased husband dated June 15, 1959.
*81 Decedent died on July 1, 1976. She and her husband executed a joint will on June 19, 1959. The 1959 instrument was admitted to probate as the husband’s will by a decree of this court entered on September 26, 1963. Decedent’s last will, dated July 10, 1973, was admitted to probate without objection on February 15, 1977.
Petitioner, as named executor of both the 1959 and 1973 instruments, thereafter instituted a proceeding which sought a determination that decedent’s 1973 will was subject to the terms and conditions of the 1959 joint will. Under the terms of said joint will, each bequeathed to the survivor all of their property. Upon the death of the survivor, the instrument provided that the "entire estate” be bequeathed to certain named individuals in various fractional shares.
This court, by decision rendered April 14, 1977 determined that the 1959 instrument constituted "an agreement supported by the mutual consideration of its provisions which is contractually binding upon both signatories * * * [T]hey represent provisions which must be equitably enforced against decedent’s later will which has been admitted to probate.” (Matter of Hassan, NYLJ, April 25, 1977, p 12, col 4.) A decree subsequently entered on May 17, 1977 provided, inter alia, that the will dated July 10, 1973 was subject to the terms and conditions of the joint will executed by decedent and her predeceased husband dated June 19, 1959, the same constituting an agreement of the parties for the disposition of their respective estates. It was directed that decedent’s estate be distributed in accordance with the directions contained in the joint will of June 19, 1959. No appeal was taken from the decree of May 17, 1977.
The Totten Trusts at issue and the balances on the date of decedent’s death are as follows: Margaret Hassan in trust for Ethel Feldman — $633.05; Margaret Hassan in trust for Heitner Family Circle — $693.46; and Margaret Hassan in trust for Gem Hassan, Elmas Graif and Reshat Hassan, Jr.— $14,062.67. None of these beneficiaries received bequests under the joint will.
The reciprocal promises of the joint will are irrevocably binding upon the survivor after the death of one of the testators (Schwartz v Horn, 31 NY2d 275; Rubenstein v Mueller, 19 NY2d 228; Rich v Mottek, 11 NY2d 90; Morgan v Sanborn, 225 NY2d 454; Hermann v Ludwig, 186 App Div 287, affd 229 NY 544; Rastetter v Hoenninger, 214 NY 66; Di *82 Lorenzo v Ciancio, 80 Misc 2d 193). "The survivor could not after accepting the benefits of the agreement make a gift in the nature, or in lieu, of a testamentary disposition or to defeat the purpose of the agreement.” (Rastetter v Hoenninger, supra, p 74.) In establishing Totten Trusts, which are clearly gifts in lieu of a testamentary disposition (see Matter of Totten, 179 NY 112), the survivor, in effect, intended to defeat the purpose of her agreement and, therefore, violated the terms and conditions of the contract contained in the joint will (Glass v Battista, 43 NY2d 620; Matter of Pasquariello, NYLJ, July 1, 1960, p 8, col 2, affd 13 AD2d 941, affd 11 NY2d 864; Matter of Nelson, 200 Misc 3).
The guardian ad litem of an infant beneficiary of the largest of the Totten Trusts, and an adult beneficiary named on this account, both contend that the aforesaid principles of law are not herein applicable. They contend the application should be denied because the funds on deposit in these trusts flow from enhancements of the decedent’s assets by her astute management of her funds, and prudent investment of her assets, subsequent to the death of her spouse. It is argued that the impact of the joint will should therefore be limited to the property owned by the testators, either jointly or singly, at the time of the death of the first of them to die, and that decedent’s property is subject to the testamentary contract contained in the joint will only to the extent of its value at the time of her husband’s death in 1963. At the least, a hearing is requested to distinguish the assets existing at the time of the death of decedent’s husband, from assets decedent acquired in her lifetime due to appreciation of her estate during the period after the death of her husband. Clearly, such an inquiry would require a review of every investment, expenditure, and item of income of the decedent for the total 13-year period between the death of her husband and her own demise.
Neither the applicable law, nor the terms of decedent’s will support the result sought by respondents or the inquiry they seek. It is contrary to the whole concept of joint wills and the mutuality of commitment contained therein to limit their impact to the assets existing at the death of the joint testator first to die, in the absence of the instrument conveying such express intent. The essence of a joint will involves a contract between two parties that whatever they may possess at the time of their respective deaths, they will leave in accordance *83 with the testamentary instrument which they are jointly executing by which they agree to be contractually bound. There is nothing to suggest that in the instant case either party could foresee with any degree of certainty who would survive, or how long they would survive. Obviously, with reference to such a contract, each party enters it with uncertainty not only as to who would be the survivor, but with equal uncertainty as to whether the survivor would expend in their lifetime the total estate so as to leave, upon the death of the survivor, no more than an unfunded testamentary scheme. It is equally uncertain as to whether the assets left would be enhanced or diminished during the life of the survivor, and whether what would have occurred would flow from prudence, imprudence, or mere chance. In the absence of contrary intent contained in the instrument, there would be no more justification for excluding from the impact of a joint will any enhancement in assets, than there would be ability to devise a penalty if imprudence had dissipated these assets during the life of the survivor. Quite obviously, any testator leaving an estate which, after the lifetime of a survivor is to pass to other beneficiaries, would do so hoping that the estate would be maintained in such a way as would represent not only prudence, but the maximum attainable enhancement. Nothing contained in such hope would incorporate an intent to exclude the enhancement from the contract in the absence of clear language suggesting the contrary. No such language is present in the instant instrument.
In Matter of Wiggins (45 AD2d 604, 607, affd 39 NY2d 791), the Appellate Division, in considering this very same argument stated: "We should not adopt such an extraordinary interpretation without a clear indication in the instrument that it represents the intention of the testators.”
It is noteworthy that the argument advanced in support of the sanctity of the Totten Trusts was urged by the dissent in Matter of Wiggins, and unequivocably rejected by the majority. Oursler v Armstrong (10 NY2d 385); Edson v Parson (155 NY 555) and Matter of Zeh (24 AD2d 983, affd 18 NY2d 900) cited by the guardian ad litem are inapposite. These cases involve situations where it was found that no binding agreement existed.
It is concluded that decedent’s undeniable right to use the assets during her lifetime as she saw fit does not extend to the ability to make a testamentary disposition or transfer in lieu *84 thereof, that deviates from her agreement embodied in the joint will. Decedent can no more circumvent the limitations imposed by her agreement to the joint will by the use of testamentary substitutes, than she can by testamentary instrument. That which is prohibited directly cannot be permitted to be achieved by indirection.
Accordingly, it is determined that the Totten Trusts for the benefit of Ethel Feldman, Gem Hassan, Elmas Graff and Reshat Hassan, Jr., constitute an ineffective effort by the decedent to pursue a testamentary scheme in violation of her contractual obligations pursuant to the joint will which governs the testamentary disposition of all of her assets. The proceeds of these accounts are assets of the estate which must be distributed in accordance with the terms of the joint will.
The situation with reference to the trust for the benefit of the Heitner Family Circle is somewhat different. This trust beneficiary is a family fraternal group which operates, owns and maintains a family plot upon which decedent is buried. Decedent was apparently a member of this family circle. It is contended by this group that the bequest through the Totten Trust to the family circle is to provide funds to insure the perpetual care of decedent’s grave.
It is concluded that decedent, applying assets subject to her use to provide for the perpetual care of her own grave, was providing for an expenditure that is in no way inconsistent with her obligations pursuant to the joint will. Clearly she was at all times free to take such steps as appear reasonable for the care of her grave, as well as a proper burial. It cannot be said that the use and enjoyment of her assets in her lifetime under the limitations contained in the joint will precluded her from the satisfaction of providing for the care of her grave perpetually in such manner as she desired, no matter how legally inartfully she pursued this goal. Accordingly, to the extent that the application seeks a determination that the trust for the benefit of the Heitner Family Circle is an estate asset, the application is denied. To the extent a determination is sought that the other Totten Trusts are estate assets, the application is granted.