In the Matter of the Accounting of JOHN A. READ, as Surviving Trustee of the Trusts under the Will of ALICE E. WILHELM, Deceased. (Appeals No. 1, 2, 3, 4.)

Fourth Department, July 9, 1982

### APPEARANCES OF COUNSEL

*Kavinoky & Cook (Wayne D. Wisbaum* and *William R. Brennan* of counsel), for appellant *pro se.*

*Phillips, Lytle, Hitchcock, Blaine & Huber (William A. Bain, Jr.,* of counsel), for appellant *pro se.*

*Torrance B. Brooks,* guardian ad litem, respondent.

*Frederick J. Gram,* guardian ad litem, respondent.

### OPINION OF THE COURT

SIMONS, J. P.

Counsel for the trustee, Phillips, Lytle, Hitchcock, Blaine & Huber, and for the objectants, Kavinoky and Cook, appeal from several orders and decrees of the Surrogate, principally from decrees determining fees payable to them from the trust estate. They are opposed on this appeal by two special guardians.

Appellant Phillips, Lytle, Hitchcock, Blaine & Huber requested attorneys' fees of $120,678 (less $20,000 previously paid) leaving a balance due of $100,678, and disbursements of $3,726.91 to compensate them for a variety of services related to the trust estate. The fees were computed on a time basis. The Surrogate granted them $52,080 (which included the $20,000 previously paid and apparently the disbursements, although disbursements were not separately awarded, i.e., he awarded a net payment of $32,080). The Surrogate made no allowance for delay in the payment of the fees or for counsels' loss resulting from prior payment of disbursements from their own funds, nor did he grant interest. No partial payment was allowed by the court during the six years in which these proceedings were before him although counsel requested that relief on several occasions.[1]

Appellant Kavinoky and Cook requested $177,475 plus disbursements of $7,290.45, for total fees and disbursements of $184,765.45 to compensate them for a variety of services to beneficiaries objecting to settlement of the trustee's accounts and to the Surrogate's construction of the will creating the trusts. The fees were based on time and results. The Surrogate granted them $50,615 plus $7,290.45 in disbursements, for a total of $57,905.45. He awarded no interest on the fee and no partial payment was allowed during the proceedings although both were requested.

By way of contrast, the two special guardians representing minors were allowed fees totaling $59,432.01 and $53,651.20 respectively, both sums including prior partial payments of $10,000, authorized by the Surrogate, plus full repayment of disbursements. In addition, the Surrogate acknowledged that he had included in the special guardians' fees an increment to compensate them for the loss of interest or delay in payment of the fees. No appeal is taken from these allowances.

After reviewing the record, we have determined that the decrees fixing appellants' fees must be modified to grant the amounts requested in full. We also grant in part the

1. The $20,000 was paid by the trustee without court approval.

relief requested in separate related appeals which will be addressed later in this opinion.

I

The underlying litigation has been before us several times (see *Matter of Wilhelm,* 60 AD2d 32, affd 46 NY2d 947; 62 AD2d 1155; 62 AD2d 1156; 63 AD2d 1120). It concerns the alleged mismanagement of the Wilhelm trusts and the construction of the will creating them.

Alice Wilhelm, settlor of the trusts, died without lineal descendants in 1962, leaving as the principal asset of her estate stock in Peter Cooper Corporations, a manufacturer of glues and adhesives, owning properties throughout the United States and Canada. Her will ordered the estate divided into 12 shares which constituted "primary trusts" with specific beneficiaries. Upon the death of the named beneficiaries, an intricate system of "sub trusts" was created. At the time of this litigation, the sole remaining trustee of these trusts was John A. Read. Under the will, he had broad discretionary powers of administration, a matter of some consequence because he was also chairman of the board of directors of Peter Cooper Corporations and received a substantial salary from it.

For some time many of the trust beneficiaries had recognized the dangers inherent in this situation. Unhappy with the income they were receiving from the trusts, they had retained several different lawyers in unsuccessful attempts to protect their interests from losses which they believed they were suffering because of the conflict of interest and the suspected self-dealing and mismanagement of the trustee. In 1974 appellant Kavinoky and Cook was retained by 52 of the 71 trust beneficiaries to seek an accounting. On March 7, 1975, pursuant to SCPA 2102, appellant Kavinoky petitioned to examine the trustee before the court concerning his administration of the trusts and the management of Peter Cooper Corporations. The examination was conducted on several days from November to February and thereafter suspended during efforts to sell the Peter Cooper Corporations to Rousselot S.A., a French company. The sale was subsequently consummated and approved by the court in November, 1976, and resulted in settlement of the litigation.

Originally, the sale to Rousselot was to involve only a transfer of corporate stock for $60 per share. When counsel realized that there would be an excessive tax loss of over $5,000,000 because of the low basis for the stock, the transfer was modified to a sale of assets. The net proceeds from the sale of assets were approximately $13,000,000, a gain of several million dollars over the anticipated net which would have resulted from the stock sale. After the sale was approved by the court, the proceeds were retained by Peter Cooper Corporations and it was reorganized into a Delaware personal holding company and renamed Wilhelm Enterprises Corporation. Wilhelm Enterprises has invested and managed the funds for the beneficiaries. This sale, plus the consent of the trustee to accept Marine Midland as cotrustee with only one shared commission and his waiver of approximately $50,000 past due commissions, were the conditions of the "Compromise of Controversies" which resulted in the settlement of the trustees' accounts by the court on April 5, 1977. Appellants applied for an allowance of fees related to the accounting proceedings by petition dated March 15, 1977.

Appellant Kavinoky and Cook base their request for allowances in the accounting proceeding primarily on the benefits achieved for their clients. Thus, their moving papers state that, among other things, the total dividends paid by the corporation to the trusts for the years 1974, 1975 and 1976, after they commenced proceedings, exceeds that paid during the three preceding years by $1,031,998; that the sale of Peter Cooper Corporations was accomplished for over $16,000,000, with resulting net proceeds of almost $12,000,000, with this greatly enhanced trust capital being placed in a diversified portfolio of investments (the trustee claimed in his testimony that only $7,200,000 could be realized to the trusts on sale of the corporation); that the increase of the yield to the trust beneficiaries was between $400,000 and $500,000 per year after the sale; that the trusts' *res* was increased by the sum of approximately $1,350,000 because they alone insisted on a higher price from Rousselot during negotiations; that appellant secured the appointment of Marine Midland Bank as cotrustee, thereby ensuring professional management of the

trusts' investments and reducing the dangers of self-dealing and that they did so with the agreement that only one fiduciary commission was to be paid to the cotrustees; that the sale eliminated the payment of high executive compensation to the trustee and his family because of their positions as officers of Peter Cooper Corporations; that the sale eliminated the risks inherent in the trust assets being invested almost entirely in one corporation which was subject to a myriad of environmental and competitive problems and that the sale avoided the risk of loss of control of Peter Cooper Corporations or the possibility of a sale under distress circumstances if such loss of control were imminent.

Appellants' requested fees also include services related to a construction proceeding.

In the original petition to settle accounts in 1975, the trustee asked for a construction of the settlor's will because one of the beneficiaries of a primary trust, Richard Wilhelm, had died. No difficulty was anticipated by any counsel or by the special guardians because the Surrogate's predecessor had already construed the will with respect to other primary trusts and held that the proceeds were to be distributed to the sub trusts per stirpes. Kavinoky and Cook did not brief the law to support that construction for the Surrogate because it concurred in the trustees' recommendation for per stirpes distribution and, as they contend, they could not justify billing the time and expense necessary to advocate a construction which they did not oppose and which was adequately explained in opposing counsel's brief. Notwithstanding all this, the Surrogate held that the trust was to be distributed per capita. In *Matter of Wilhelm* (60 AD2d 32, 39, *supra*), we reversed the Surrogate and ordered per stirpes distribution. When we did so, we had before us a diagrammatic exhibit of the Wilhelm family tree that had not been before the Surrogate (see *Matter of Wilhelm,* 62 AD2d 1155, *supra*).

After the reversal, during the proceedings on fee allowances, the Surrogate scheduled and conducted an inquiry into the submission of this exhibit to the Appellate Division by appellant Kavinoky and Cook and the failure of appellant Phillips, Lytle to object to it or to advise the

special guardians that the information in the exhibit had not been before the Surrogate in that form. During this inquiry, the Surrogate stayed the payment of any counsel fees or disbursements and he stated that his later determination of them would reflect what he considered to be appellants' "unethical conduct".

Appellants' applications for fees in the construction of the will were updated in supplemental petitions filed in 1979. Charges for these services were based entirely on time at hourly rates that the Surrogate found reasonable.

On December 3, 1979, after requesting extensive supplementation of the fee requests and holding several hearings on the matter, the Surrogate handed down a 56-page decision with an additional 4 pages of exhibits attached fixing the allowances here appealed. The decision was critical of both the ability and professionalism of appellants. Among other things, the Surrogate complained that the attorneys had not assisted him with legal briefs on the construction motion, other than the brief submitted by the trustee's counsel, and, true to his word, he considered in detail the "unethical conduct" of appellant Kavinoky in submitting the family tree to the Appellate Division and of appellant Phillips, Lytle in failing to object to consideration of it or advise the special guardians about it. In essence, he considered that a substantial part of the expense of the appeals of his construction decision was unnecessary due to this conduct by appellants. Appellants moved for reconsideration of the fee applications and in a second decision on May 21, 1980 the Surrogate adhered to his original determination.[2]

## II

SCPA 2110 provides that an attorney may petition the court to fix his compensation for services in connection with estate matters (see Semerad, Practice Commentary, McKinney's Cons Laws of NY, Book 58A, SCPA 2110, p

---

2. On the motion to reconsider, counsel pointed out that in awarding fees the court had considered the total fees received for all services directly or indirectly related to the Wilhelm estate and in doing so, he had made an error of approximately $50,000 adverse to appellants Phillips, Lytle. The Surrogate corrected this error, but declined to revise the final allowances upward to account for it.

485; see, also, SCPA 2302, subd 6; and see, generally, 2 Speiser, Attorneys' Fees, §§ 14:162, 14:163). There is no hard and fast rule for determining reasonable compensation, but it is familiar law that the Surrogate, in exercising this power, must do so "with reason, proper discretion and not arbitrarily" (*Matter of Brehm,* 37 AD2d 95, 97). There are several well-recognized guidelines. In *Matter of Potts* (213 App Div 59, affd 241 NY 593), we said: "In general the court, in determining the justice and reasonableness of an attorney's claim for services, should consider the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained." (*Matter of Potts, supra,* p 62; accord *Matter of Freeman,* 34 NY2d 1, 9.) That legal formulation is an adequate standard by which we may resolve the questions before us.

### III

Little purpose will be served by reciting in detail the various points and counterpoints debated by the court and counsel. They are contained in a 1,000 page appendix to the record of these fee applications settled by the court. Suffice it to say that we judge appellants' requests reasonable under any accepted standard. It is appropriate, in doing so, that we discuss the Surrogate's expressed reasons for his ruling and our disagreement with them.

First, the Surrogate found duplication of the charges of both appellants.

Appellants' original petitions stated that both firms had received fees for matters related to the Wilhelm estate and the sale of Peter Cooper Corporations from other sources. Upon request of the Surrogate, they itemized the services to others and the fees received for them and they appeared before the Surrogate to explain them fully. Moreover, appellants offered to make available to the Surrogate office time slips and records for his personal examination. In addition, appellant Kavinoky and Cook hired a former Chief Judge of this State to appraise their services, to determine if there was any duplication in the billing and to express his opinion of value. His affidavit was submitted to the court but rejected by it.

The record demonstrates that appellant Phillips, Lytle had previously received $180,000 from Peter Cooper Corporations in connection with the sale of assets and $43,793.50 from Wilhelm Enterprises Corporation, its successor, for services as general counsel. Appellant Kavinoky and Cook had previously received $107,500 from Peter Cooper Corporations for services in connection with the sale, $2,500 from Carl Wilhelm, a beneficiary client, slightly over $19,500 from the several other beneficiaries whom it represented and $49,174.76 from four nonbeneficiary stockholders of Peter Cooper Corporations whom it represented, for services partly related to the sale of the corporation and partly unrelated to the sale.

Appellants Phillips, Lytle filed affidavits swearing that they had not double-billed and explaining that where duplication appeared to exist, it was because services were rendered for both clients and appellant had apportioned the charge between them. The record contains no evidence that this representation was untrue. Similarly, the Surrogate claimed duplication in the accounts of Kavinoky and Cook. We have examined these voluminous records, however, and find no duplication warranting the reduction assessed against either appellant.

Second, the Surrogate suggested that the greater part of Phillips, Lytle's fee should be paid by the trustee (at least inferentially supporting the contention of the objectants' attorneys that their efforts, where others had failed, had brought mismanagement to light and forced a reconstitution of the trust assets). Notwithstanding the institution of proceedings, however, there was never any determination of impropriety or mismanagement by the trustee. He was entitled to retain counsel in matters affecting the trust (see *Matter of Ordway,* 196 NY 95) and have his reasonable attorneys' fees paid by it (EPTL 11-1.1, subd [b], par [22]; *Jessup v Smith,* 223 NY 203). Moreover, even though no breach of fiduciary duties has been found in this case, even when such a finding is made, a trustee is not necessarily personally liable for attorney's fees (see *Ellis v Kelsey,* 241 NY 374; *Matter of Kettle,* 73 AD2d 786).

The Surrogate also speculated that the efforts of counsel did not bring about the favorable reconstitution of the trust

assets. Suffice it to say that when Kavinoky and Cook commenced litigation the strength of the trust and the income from it was, and had been for some time, suspect. When the litigation was concluded, counsel's clients and indeed all the trust beneficiaries enjoyed the benefit of a startlingly improved trust operation. The evidence in the record entitles appellant Kavinoky and Cook to claim substantial responsibility for these results (see *Matter of Bellinger,* 55 AD2d 448, 452).

Finally, we find no reason for the severe criticism of counsels' services in handling the construction proceeding, either as being too little before the Surrogate's decision or too much after it. Manifestly, their position was correct that per stirpes distribution was proper and that extensive explication of the law by them to the trial court was not warranted. All the attorneys involved, five Judges of this court and the six sitting Judges of the Court of Appeals have said so. Nor do we agree with the court's condemnation of appellants for unethical conduct. Insofar as the family tree incident is concerned, we do not approve the submission of material to us on appeal that was not previously before the trial court, but in our judgment this was a relatively minor peccadillo, not warranting the time and energy expended on it. We have previously explained why (see *Matter of Wilhelm,* 62 AD2d 1155, 1156, *supra*). Nor do we find Kavinoky and Cook guilty of a conflict of interest in pursuing the construction proceeding. It is evident from their explanations contained in the record that there was a full disclosure to all their beneficiary clients, most of whom also had additional counsel advising them, and that no conflict existed.

In fairness to appellants, respected law firms of this State, it is appropriate for us to state that we find no evidence of impropriety and incompetence in the record. This was a matter of magnitude handled capably and to the ultimate benefit of all litigants involved. The trust was revitalized, the risk of loss or mismanagement minimized, and lengthy and costly litigation to achieve similar results was avoided. In passing, we cannot help but note that many of the incidents in this case are distressingly similar to those reviewed in a prior decision of this court involving

another Surrogate (*Matter of Haas,* 33 AD2d 1). Our views on proper judicial handling of such matters have not changed from the views expressed there.

## IV

Appellant Kavinoky and Cook have filed additional appeals and we treat them summarily.

Noting that interest may be granted by the court under appropriate circumstances and in the exercise of discretion (see *Matter of Aaron,* 30 NY2d 718, 719-720), they appeal the decree denying interest and also denying additional fees for the services involved in justifying their fee applications to the Surrogate. We are troubled by the Surrogate's delay in authorizing payment of partial fees and his failure to periodically authorize reimbursement of appellants' expenses here, particularly since there were adverse tax consequences to the estate from his failure to do so. Nevertheless, we defer to the Surrogate's discretionary rulings on this matter. The court properly denied counsels' request for additional fees for services in supporting and explaining their original fee applications.

They also appeal from two other mandates of the court, the first an order refusing to accept the former Chief Judge's affidavit as part of the fee application and the second refusing to include the affidavit in the record which had to be settled by order of the court. The court's refusal to receive the affidavit was based upon a claimed stipulation of counsel that the applications would be decided on the record before it. No such stipulation appears in the record and the appellants were entitled to submit the application if they wished, the evidence to be given such weight by the court as it deemed proper (see *McAvoy v Harron,* 26 AD2d 452, 454, affd 21 NY2d 821; *Matter of Snell,* 17 AD2d 490, 493-494). Accordingly, the record should be resettled to include the affidavit. We have had it before us, by our permission, as an exhibit.

The decrees granting attorneys' fees should be modified to grant the fees as requested in appellants' petitions, and the amounts and disbursements should be allocated between the various trusts as requested in the moving papers.

The order denying interest and additional fees should be affirmed.

The order refusing to accept the former Chief Judge's affidavit should be reversed and the affidavit received.

The order settling the record should be modified and the record resettled in accordance with this opinion and as modified affirmed.

HANCOCK, JR., CALLAHAN, DENMAN and MOULE, JJ., concur.

Appeal No. 1. — Decrees unanimously modified in accordance with opinion by SIMONS, J. P., and as modified affirmed, with costs to appellants, payable out of the estate.

Appeal No. 2. — Decree unanimously affirmed. Same opinion as in *Matter of Wilhelm*, Appeal No. 1, decided herewith.

Appeal No. 3. — Order unanimously reversed and affidavit received. Same opinion as in *Matter of Wilhelm*, Appeal No. 1, decided herewith.

Appeal No. 4 — Order unanimously modified and record resettled in accordance with the same opinion as in *Matter of Wilhelm*, Appeal No. 1, decided herewith.