■ In the Matter of the Estate of KATE KAMINSKY, Deceased. HANNAH MAGIN, Appellant; BEATRICE REISFIELD, Respondent.— Appeal by the executrix of the last will and testament of deceased from a decree of the Surrogate's Court of Ulster County entered in a proceeding instituted pursuant to sections 205 and 206 of the Surrogate's Court Act which sustained *inter vivos* gifts of $6,000 and $100 allegedly made by deceased to a daughter and granddaughter respectively. On December 2, 1957 deceased, then about 70 years of age and long afflicted with diabetes and heart disease, fractured her hip in a fall which necessitated

her immediate removal to a hospital where she was confined until her death on April 20, 1958. Besides respondent she left her surviving another daughter, the appellant herein, and a son. On the date of her admission to the hospital deceased had two accounts in the Ellenville Savings Bank in which there were on deposit to her credit the respective sums of $4,118.29 and $6,747.14. The smaller account was in the form of a Totten trust for her son; the other was in the name of deceased alone. These funds comprised a large part of her general and all of her liquid resources. The entire proceeds of the trust account were withdrawn by respondent on January 2, 1958 and redeposited in a joint account with her husband in another savings bank. The funds in the second account were also withdrawn by her on March 31, 1958 and deposited in an account opened in her name in a third bank. The latter withdrawal was accomplished by the presentation of the pertinent passbook allegedly delivered to respondent by deceased in October, 1957 accompanied by an order on the bank signed in blank in early January and filled in by respondent on or about the date of the closing of the account. Concededly, the purpose of the first withdrawal was to provide accessible funds for the payment of the medical, nursing, hospital and other sundry expenses incurred by deceased as the result of the injury. In a subsequent accounting to the executrix respondent claimed to have expended therefrom the sum of $3,694.31 for these purposes. The second withdrawal, she testified, was necessary to carry into effect the gifts in controversy here and accordingly was so directed by deceased. To support her claim of title to $6,100 of the funds in her possession respondent relied upon the testimony of a witness with whom and with whose daughter she had been on friendly terms for several years. This witness related two conversations which she claimed to have had with deceased; the first allegedly occurred during a shopping trip in the Fall of 1957; the second took place in January, 1958 at the hospital where deceased was confined. The witness stated that on both occasions the deceased expressed dissatisfaction with her will in that it favored her son over respondent; she testified that in the second conversation deceased informed her that she had given her granddaughter $100 as a graduation present and made a gift of $6,000 to her daughter " Bea " because " she didn't get the deal the others did." The will of the deceased apparently executed in 1956 and admitted to probate after objections filed by respondent which alleged *inter alia* that her mother " was not of sound mind or memory nor mentally capable of making a Will " were withdrawn, fulfilled the obligations of an earlier agreement between her brother and their parents which required that testatrix devise to him the remaining one-half interest in a Summer bungalow colony in Ulster County upon condition that he execute and deliver to his two sisters a mortgage thereon securing the payment of $18,500, bequeathed $1,000 to each of her four grandchildren and divided the residue of the estate equally among her children. The rule long ago announced and often reiterated is that " He who attempts to establish title to property through a gift *inter vivos* as against the estate of a decedent takes upon himself a heavy burden which he must support by evidence of great probative force, which clearly establishes every element of a valid gift ". (*Matter of O'Connell,* 33 App. Div. 483; *Matter of Kimmey,* 273 App. Div. 142; see, also, *Rosseau* v. *Rouss,* 180 N. Y. 116, 121.) Measured by this exacting standard the evidence of respondent fails to establish an intent by the deceased to divest herself of title to the funds in question. It is difficult to conceive that a frugal widow already aged, beset with disease and injury, possessed of relatively small income and confronted with an obviously long period of expensive hospitalization would have been so improvident as to make the gifts contended for. The allegation by respondent that deceased was of unsound mind when she executed the will is inconsistent with the claims now made. The distribution of her modest estate seems not

unreasonable. The record does not sustain respondent's charge of prior discriminatory and unfair treatment by her parent. Decree modified, on the law and the facts, to increase the amount directed to be paid by respondent to the executrix from $1,134.71 to $7,234.71 and, as so modified, affirmed, with costs to the parties payable from the estate. Settle order. Bergan, P. J., Coon, Gibson, Reynolds and Taylor, JJ., concur.