OPINION OF THE COURT
C. Raymond Radican, J.
On this motion by defendant for leave to reargue and renew no showing has been made that the court overlooked any material fact or misapprehended the controlling law (2A Weinstein-Kom-Miller, NY Civ Prac 1f 2221.04). Reargument is not designed to allow counsel to rehash questions already decided, and consequently, the branch of the application to reargue is denied (2A Weinstein-Korn-Miller, ibid.). However, the request for renewal based on new evidence requires more extended comment.
The decedent and his wife executed a joint will which bequeaths the property of the first to die to the survivor; appoints the survivor as executor, and upon the death of both appoints Thelma Cohen, decedent’s daughter, as executrix of their joint will. The other daughter, Marilyn Margulis, is named an alternate executrix.
*169 Paragraph third of the will specifies that if decedent and his wife die at the same time or in a common disaster “all property of which we or either of us has power of disposal is hereby given * * * unto * * * Thelma Cohen and Marilyn Margulis.” However, the will makes no disposition of the property of decedent and his wife following both deaths in the absence of them being simultaneous. This omission prompted the decedent’s daughters to commence an action in the Supreme Court against their stepmother requesting: (1) judgment declaring the will irrevocable; (2) a declaration that the will bestowed on them a gift by implication; (3) an accounting, and (4) the imposition of a constructive trust. The action was transferred to this court prior to the determination of a pending motion to dismiss the complaint.
Defendant’s motion to dismiss the complaint was treated by this court as one for summary judgment, and granted in favor of plaintiffs on the first three causes of action, and in favor of defendant on the last cause of action which was dismissed without prejudice to renewal should defendant attempt to defeat the rights of plaintiffs by a dissipation of her assets in disregard of her contractual obligations (125 Misc 2d 729).
The request for renewal is supported by the submission of allegedly new evidence consisting of a letter written to decedent purportedly in response to an inquiry made by him after he had executed his will. The letter, dated January 1, 1982, informed the decedent that if he died before his wife his will gave everything to his wife and nothing to his children by a prior marriage.
Plaintiffs oppose renewal of the application contending the letter is a privileged document between attorney and client, and in any event should not be considered because (a) the attorney writing the letter did not prepare the will; (b) no explanation has been given for its belated discovery, and (c) no proof offered to show this letter was mailed to and received by the decedent. On the other hand, defendant asserts the letter is relevant to show the decedent’s state of mind, and that his failure to change the will after being advised of its provisions, confirms that he had no intention to benefit plaintiffs except in the unlikely event decedent and his wife died in a common disaster.
The primary rule is that a testator’s intent must be ascertained from the will itself and cannot be shown by other evidence unless it is offered for the purpose of explaining an ambiguity arising dehors the instrument (7 Warren’s Heaton, Surrogates’ Courts § 26 [6th ed 1984]). Since the intention of the testator, as extracted from the will viewed in its entirety, is *170 controlling (Matter of Fabbri, 2 NY2d 236, 240), extrinsic evidence is not admissible to vary, contradict or add to the terms of a will or to show an intention different from that disclosed by the language employed in the will (39 NY Jur 2d, Decedents’ Estates, § 696). The Surrogate, however, in a proper case, may give consideration to the facts and circumstances surrounding the execution of the will in order to ascertain the testator’s intent (7 Warren’s Heaton, Surrogates’ Courts § 26, 112 [6th ed 1984]).
In the present case, the failure of the decedent to designate how his property should be distributed after his wife’s death left a void in the testamentary scheme. The issue is, can the doubt created by his omission be resolved by the admission of the letter of January 1, 1982?
The letter sought to be introduced shows the decedent was advised by a lawyer that the joint will he and his second wife executed made no provision for his children and allowed his wife, on her death, to dispose of the property as she saw fit. Inasmuch as the decedent failed to change his will, movant’s claim the decedent’s intention to disinherit his children is established. Actually, the will as written benefits decedent’s daughters should he and his wife die in a common disaster, and reveals no intent to benefit any other person except his wife (defendant) and then only during her lifetime. If this letter justifies the imputation to the decedent of an intention to disinherit his children, the letter cannot be received for it contradicts the express terms of the will.
The letter, it may be noted, states the lawyer’s opinion of the will, and whether that interpretation was adopted by the decedent cannot be known. Significantly, the letter provides no clue of the facts and circumstances surrounding the execution of the will. Of paramount importance is the intention of the decedent at the time he made the will, and statements thereafter made by him not being material to his inquiry must be excluded from evidence. The courts have consistently forbade the reception of memoranda regarding conferences held with the testator after the execution of the will (Matter of Searle, 13 Misc 2d 912, affd 8 AD2d 831; Matter of Salterini, 7 Misc 2d 497, 499). The reason for such course of action was explained in the last cited case as follows: “If the court were permitted to so far depart from the statutory and judicially fixed standards prescribed in such situations as to substitute the scrivener’s recollection of what the deceased had told him for the language of the will itself it becomes plain at once that the instrument as the repository of the testator’s testamentary program would cease to have any *171 usefulness whatsoever. That is the reason why the courts have consistently declined to permit the introduction of extrinsic evidence except in those cases where the ambiguity exists outside the instrument (viz. — T give my white horse to David Jones/ Which white horse? Which David Jones?) or where the language of the will gives rise to an otherwise irreconcilable inconsistency, contains a manifest conflict in terms, or is marked by gross uncertainty [citations omitted]”.
The branch of the motion to renew the prior application is also denied.