OPINION OF THE COURT
Bellacosa, J.
Decedent, Elizabeth Battcock, agreed in 1971 as part of a settlement of her deceased husband’s estate not to change a will she had executed in 1969. Her daughter and grandchildren claim that she breached the settlement agreement by subsequently creating Totten trust accounts for beneficiaries not named in that will. The religious and charitable beneficiaries of the disputed trust accounts appeal, arguing that the Appellate Division erred in holding that the trust accounts violated the 1971 settlement agreement. We hold that the agreement, which did not expressly prohibit the creation of Totten trusts, does not impliedly create such a restriction on the decedent’s actions during her lifetime. The order of the Appellate Division, which is before us by leave of that court, should be reversed and the order of the Surrogate’s Court should be reinstated.
Elizabeth Battcock’s husband died in 1971, leaving her $1 in his will; the remainder was left to their two children, Gregory Battcock, now deceased, and plaintiff Patricia Battcock Blackmon. Elizabeth Battcock elected against her husband’s will *738 and then settled with the estate, agreeing to accept $3,600 (12%) of his estate in full settlement of all her claims. In return, she promised to "leave intact and without change” her Last Will and Testament dated December 1, 1969 (1969 will). No mention was made of Totten trusts, trust accounts, inter vivas transfers or gifts of any kind. Decedent’s 1969 will bequeathed a sum of money to a church in Yonkers and to a friend, with the residue and remainder to her two children, or to her grandchildren per stirpes in the event her children predeceased her. .
Decedent’s son died without issue in 1980. During the years following his death, she opened bank accounts — Totten trusts (see, EPTL 7-5.2) — in her own name, in trust for various charities, including the appellants Salesians of St. John Bosco (New Rochelle), Church of the Immaculate Conception, and the Salvation Army (Yonkers Branch). She also made two new wills — in 1982 and 1984 — in which she expressly excluded her daughter and her grandchildren. Following decedent’s death in September 1985, with plaintiffs’ consent, her 1982 will was admitted to probate and letters testamentary were issued. The two subsequently executed wills themselves are not in controversy in this litigation and have no direct relevance or dispositional significance.
Plaintiffs — decedent’s daughter and her children — instituted this action by verified complaint in Supreme Court (later transferred to Surrogate’s Court), seeking a declaration that the Totten trusts violated the 1971 agreement. They sought an order enjoining the bank from paying out the trust accounts to the named beneficiaries. The Totten trust beneficiaries moved for summary judgment on Statute of Frauds grounds. The Surrogate’s Court denied plaintiffs’ motion and granted the beneficiaries’ motion. The Surrogate concluded that the Statute of Frauds precluded reading into the 1971 agreement an implied prohibition against the creation of Totten trust accounts, and directed the depository banks to pay out the account balances to the named beneficiaries.
The Appellate Division reversed, holding that a promise not to create Totten trusts must be implied into the settlement agreement promising not to change the existing will. The court reasoned that such a construction was necessary to prevent defeat of the primary purpose of the agreement. The implied promise was deemed also to be in the stipulation in satisfaction of the Statute of Frauds (168 AD2d 590). Justice *739 Lawrence dissented, urging that in the absence of an express provision in the settlement agreement precluding the creation of Totten trust accounts, no basis exists for judicially inferring such a promise (168 AD2d, at 592, supra). We agree with the conclusion reached by the Surrogate and the dissenting Justice and therefore reverse the order of the Appellate Division and reinstate the order of the Surrogate’s Court granting summary judgment in favor of the appellants — the Totten trust beneficiaries.
We begin with the fundamental proposition that a will is ambulatory in nature and is ordinarily revocable during the life of the testator (EPTL 1-2.18 [a]; Tutunjian v Vetzigian, 299 NY 315, 319; Matter of Goldberg, 275 NY 186, 193; Edson v Parsons, 155 NY 555, 568). Even after due execution of a will, testators also retain unfettered authority to dispose of all property during their lifetimes (Matter of Fabbri, 2 NY2d 236, 239). Individuals may by agreement, however, validly surrender their power of revocation (Oursler v Armstrong, 10 NY2d 385, 389; Tutunjian v Vetzigian, 299 NY 315, 319, supra; Edson v Parsons, 155 NY 555, 567, supra). On the other hand, the law strictly scrutinizes the renunciation of the right to revoke a will and requires a threshold showing of clear and unambiguous evidence to give effect to this surrender of rights (Oursler v Armstrong, 10 NY2d 385, 389, 392, supra; see, Rubenstein v Mueller, 19 NY2d 228, 232).
In this case, the 1971 settlement agreement signed by decedent in which she agreed not to change her 1969 will clearly satisfied the Statute of Frauds requirement as to that singular promise. Significantly, however, the 1971 agreement is silent regarding other forms and methods of alienation of property. When Elizabeth Battcock deposited money in the disputed bank accounts for the designated beneficiaries, she established revocable savings account trusts, commonly known as Totten trusts (EPTL 7-5.2; Matter of Totten, 179 NY 112). Beneficiaries enjoy only expectancy interests and not vested legal rights (EPTL 7-5.2). In this case, "title to the funds [vested] in the beneficiaries] free and clear of the trust” on the death of Elizabeth Battcock (EPTL 7-5.2 [2], [4]), unless a promise barring her from creating the Totten trusts is implied and is found to violate the 1971 agreement.
We disagree that the promise must be implied into decedent’s 1971 agreement not to change her will (168 AD2d, at 591, supra). To do so constitutes a significant judicial altera *740 tian and addition to the settlement agreement of the parties. The agreement itself is silent as to Totten trusts or any other testamentary-like forms of disposition of property. Only the change of the will is forbidden. Moreover, the significant infringement of decedent’s rights during her lifetime to do whatever she wished with her property is not fairly inferable "by reasonable construction and necessary implication” (Cohort & Co. v Russell, 23 NY2d 569, 575). That approach also suggests that other affirmative and negative dispositions and powers could be squeezed out of this no-change-in-will promise. The application and expansion of the proposition of the law flowing from this case would be a most unsettling, troubling and unwise development in this area of the law. In the absence of an express provision in the agreement or factors far more substantial within the four corners of the settlement agreement itself from which a judicial inference could comfortably and properly be drawn, courts should not innovate for parties after the fact. The parties, after all, could have explicitly provided for the significant limitation on the right to create Totten trusts. Decedent therefore retained her right in this respect, just as she retained her rights to convey all or any part of her property by inter vivas gifts or transfers, a power plaintiffs concede.
The entirety of decedent’s promise in the settlement agreement involving her husband’s estate was to unalterably retain her children and their issue as residuary legatees under her 1969 will. This promise did not include a provision to leave any particular property or any amount of money to them, and nowhere purported to handcuff her from disposing of certain or all of her assets by gifts or bank trust accounts for named beneficiaries. Thus, the express agreement was not violated by what the decedent chose to do in this respect. To hold otherwise rewrites the settlement agreement.
Further, since a contract "to establish a trust” must be in writing (EPTL 13-2.1 [a] [1]), a promise to refrain from creating trust accounts must also be in writing, for the same reason that a promise to refrain from altering an existing will must be reduced to a writing (Rubin v Irving Trust Co., 305 NY 288). The promise not to create Totten trusts, assuming it could be implied in this case, does not satisfy that writing requirement.
Finally, the argument of plaintiffs by analogy to the decisional law governing joint wills is not helpful and is clearly *741 distinguishable. In that line of cases, this Court has held that where two people sign joint or mutual wills and one of them dies, the survivor is bound to the terms of the will and may not make a different testamentary disposition or inter vivas gift that would defeat the purpose of the joint will agreement (Glass v Battista, 43 NY2d 620, 624; Schwartz v Horn, 31 NY2d 275, 279; Rastetter v Hoenninger, 214 NY 66, 73; see, Matter of Hassan, 98 Misc 2d 80, 83-84). Joint or mutual wills involve an agreement between two people to dispose of their property in a particular manner — either to each other or to third persons. The compact generally involves the joint disposition of the collective property of both and not the independent disposition by each of their own (Glass v Battista, 43 NY2d 620, 624, supra; Rastetter v Hoenninger, 214 NY, at 72, supra). Where the agreement bequeaths a specific piece of property to named individuals, the survivor is precluded from making an inconsistent inter vivas gift (Schwartz v Horn, 31 NY2d 275, 280, supra). But an agreement that the survivor’s entire estate will be left to certain beneficiaries does not necessarily prevent a survivor from making a lifetime gift, since such a gift would not necessarily defeat the purpose of the agreement (id.; see, Rastetter v Hoenninger, 214 NY 66, 73, supra). This is so because only plain and express words limiting the use of, or impressing a trust upon, the property of the other during their lifetimes would be sufficient to prevent disposition by the owner after the death of the other (Rastetter v Hoenninger, 214 NY 66, supra). The settlement agreement here, with its express and claimed implied restrictions, is simply not analogous to the joint and mutual will rules and policies. Inconsistent testamentary dispositions or inter vivas gifts would defeat the very purpose of particularized promises, expectations and mutuality of benefits involved with joint and mutual wills. That is not this case.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the order of the Surrogate’s Court, Westchester County, reinstated.