OPINION OF THE COURT
Lee L. Holzman, J.
In this SCPA 2103 discovery proceeding, the administrator, *279 decedent’s son, initially sought to recover from respondent, his sister, the proceeds from 13 bank accounts totaling $249,235.85 as well the proceeds of a life insurance policy in the face amount of $10,000. Petitioner alleged that respondent obtained the withdrawals from the accounts and the change of beneficiary on the insurance policy as a result of fraud and undue influence. To the extent that the answer responded to the merits of the litigation, respondent essentially denied the material allegations contained in the petition and alleged that she received the assets in issue as gifts.
Decedent died on June 19, 1979, at the age of 71 years. His wife, who had been battling cancer for approximately two years, had died unbeknownst to decedent the day before his own death. Decedent’s distributees are petitioner, another son, and respondent. Before respondent ultimately defaulted in appearing for a court-ordered deposition and defaulted on the date certain scheduled for trial of the issues raised in this proceeding, she had frequently and vigorously participated in this and related proceedings.
At the inquest, the 10 passbooks still in issue, decedent’s hospital records, decedent’s spouse’s hospital records, and respondent’s examination before trial in the contested probate proceeding were admitted in evidence. Almost the entire balance in eight of the accounts had been withdrawn shortly prior to the death of decedent and the entire balance had been withdrawn from two accounts. The accounts were payable as follows: to either the decedent or his spouse or the survivor in trust for respondent; to either the decedent or his spouse or the survivor in trust for their granddaughter, who is respondent’s daughter; to either decedent or his spouse or the survivor in trust for a son of decedent; and to decedent or his spouse or the survivor.
Respondent conceded at an examination before trial in the contested probate proceeding that she "took the money” and "put it into a personal account in Florida”. However, she contended that this was done at the direction of her parents. Respondent further testified to obtaining all of the necessary "withdrawal slips” from either or both of her parents at a time when they were both in the hospital. Respondent did not recollect exactly when she obtained the withdrawal slips or whether she collected the proceeds in person or by arranging for collection by Florida banks.
Based upon the default of respondent, petitioner’s uncontro *280 verted allegations of fact, including the allegations as to the specific sums at issue and the dates of the wrongful withdrawals from the specified accounts, must be accepted as due proof thereof (SCPA 509). Moreover, respondent averred that she was the recipient of gifts. Inasmuch as decedent can no longer give his version of the transactions, respondent had the burden of establishing all of the elements of each gift by clear and convincing evidence (Matter of Lefft, 44 NY2d 915; Matter of Abramowitz, 38 AD2d 387, affd 32 NY2d 654; Matter of Kaminsky, 17 AD2d 690, appeal dismissed 12 NY2d 840), including that the deceased donor had the capacity to make a gift (Matter of Creekmore, 1 NY2d 284).
The voluminous hospital records corroborate the contention that both decedent and his predeceased spouse lacked the capacity to make valid gifts during the last hospital stays of either of them. Thus, even if respondent’s pleadings had not been stricken, it would have to be concluded that she failed to come forward with any proof to rebut these records and to meet her burden of establishing that either decedent or his spouse had sufficient mental capacity to form the requisite donative intent to make a valid gift. Accordingly, as to the five accounts payable to either decedent or his spouse or the survivor, respondent has wholly failed to sustain her burden of proof to establish that she was the donee of a valid gift and petitioner is entitled to recover the sum of $125,149.76 that was withdrawn from these accounts together with interest from the date of each withdrawal.
Different issues are presented with regard to the withdrawals from the accounts which were in decedent’s name in trust for designated beneficiaries. There does not appear to be any authority directly in point as to whether the estate is entitled to pursue a claim for a wrongful withdrawal from this type of account where, as in this proceeding, there is no allegation that the recovery is needed to pay administration expenses, debts or for any other specific estate purpose.
The popular name for an account in trust for a designated beneficiary is a Totten trust account (Matter of Totten, 179 NY 112; Blackmon v Estate of Battcock, 78 NY2d 735). A Totten trust account is referred to as a poor man’s will because it is presumed that the account is used as a substitute "to avoid the trouble of making a will” (Matter of Totten, supra, at 124). These accounts are similar to wills in that the beneficiaries have a mere expectancy rather than a vested interest while the depositor is alive and the depositor retains the full enjoy *281 ment of the amount on deposit prior to death, including the right to revoke the trust in whole or in part by making withdrawals therefrom (EPTL 7-5.2; Blackmon v Estate of Battcock, supra; Matter of Totten, supra).
However, upon the death of the depositor, there are substantial differences between the rights of the designated beneficiary under the Totten trust account and a beneficiary under the will. Upon the death of the depositor, the account passes by operation of law directly to the designated beneficiary pursuant to the contract between decedent and the depository and irrespective of any provision in decedent’s will unless the trust is revoked in the will by making the required specific references to the account, the beneficiary and the financial institution (EPTL 7-5.2 [2], [4]). Inasmuch as the Totten trust account is not a testamentary asset, the proceeds from the account may not be used to pay either the administration expenses of the estate or decedent’s debts unless the testamentary assets are insufficient to pay these obligations (Beakes Dairy Co. v Berns, 128 App Div 137; Matter of Garofalo, 109 Misc 2d 811, 812, and cases cited therein).
Here, in essence, it has been concluded that respondent failed to establish that decedent was competent when respondent made the withdrawals from the Totten trust accounts. Had decedent been an adjudicated incompetent, the court would have followed a policy of preserving the Totten trust account " 'intact during the incompetency of the depositor’ ” based upon the presumption that, provided that the incompetent would not otherwise be harmed by pursuing this policy of preservation, the incompetent, if competent, would have first expended funds which were not specifically earmarked for a designated beneficiary (Matter of Sabot, 28 Misc 2d 265, 267; Matter of Biskur, 184 Misc 239, 240; see also, Ganley v Lincoln Sav. Bank, 257 App Div 509). The court held in Gorfinkel v First Natl. Bank (19 AD2d 903, affd 15 NY2d 711), that, after the death of the incompetent, the beneficiary of a Totten trust account was entitled to recover the full amount transferred without court order from the Totten trust account to a checking account in the name of the committee despite the fact that the committee had partially expended the proceeds from the account while the incompetent was alive. Moreover, it is logical that the beneficiary of a Totten trust account should be on at least equal footing with the beneficiary of a specific disposition under a will, who does not lose the specific disposition, even though it has been lawfully disposed of by a *282 committee or conservator, provided that the proceeds from the sale may be traced (EPTL 3-4.4).
With regard to the three accounts in trust for beneficiaries other than respondent, it would have been appropriate to add these beneficiaries as parties to the proceeding so that they could have had the opportunity to assert a claim to the proceeds wrongfully withdrawn from the accounts. However, in the absence of an application by any party, including respondent, to add these beneficiaries as parties, the issue is whether the estate should be denied any relief because they were not joined as parties.
While decedent was alive the beneficiaries only had a mere expectancy and, consequently, during this period decedent was the only party who could have asserted a claim based upon the withdrawals (Blackmon v Estate of Battcock, supra). Generally, a fiduciary of an estate may assert any claim on behalf of the estate that the decedent might have asserted individually (EPTL 11-1.1 [b] [13]). It has been suggested that a prudent fiduciary should retain Totten trust passbooks after decedent’s death until it is certain that ownership vests in the designated beneficiary (3 Warren’s Heaton, Surrogates’ Courts § 231, ¶ 2 [b] [6th ed]). Moreover, it would appear that the estate would be entitled to the proceeds from the account if the designated beneficiary is not interested in asserting a claim thereto (see, EPTL 7-5.2 [3]; 2-1.11 [d]). Therefore, it is concluded that between the estate and the person who wrongfully withdraws funds from a Totten trust account, the estate is entitled to hold the funds until the rightful owner is ultimately determined.
Consequently, petitioner is entitled to recover the sum of $43,675.11 together with interest from the date of each withdrawal from the accounts which were "in trust for” either Paul Mirsky or Hope Ulan. However, the beneficiaries of these accounts shall be necessary parties to an accounting proceeding or other appropriate proceeding in the event that petitioner collects any portion of the funds withdrawn from these accounts.
There remains to be decided whether the estate is entitled to recover for the withdrawals from the two accounts in trust for respondent. The answer to the question depends upon whether the holding in Matter of Kleinberg v Heller (38 NY2d 836), with regard to joint bank accounts with right of survivor-ship dictates, by analogy, a finding that respondent forfeited her right as a beneficiary of the trust accounts.
*283 In Kleinberg (supra), based upon the opinion of the trial court (Matter of Lang, 76 Misc 2d 636), the court held that an estate could recover from a surviving joint tenant to the extent that she had withdrawn an amount in excess of her moiety (one-half) interest from a joint account during the decedent’s lifetime (see, Banking Law § 675) and is unable to prove that the decedent either consented to or subsequently ratified the withdrawal. The Court of Appeals in Kleinberg both reversed the decision of the Appellate Division, First Department (45 AD2d 514) and changed the prevailing rule in the Second Department (Matter of Filfiley, 63 Misc 2d 824, affd 43 AD2d 981) that the survivor should be entitled to the entire amount in the account regardless of whether the withdrawal was premature. The rationale of the Filfiley rule was that the survivor should not be punished for the precipitous withdrawal because the proceeds of the account would have ultimately passed to the survivor by operation of law inasmuch as decedent took no action with regard to the account while living.
Judge Fuchsberg, in his concurring opinion in Kleinberg (supra), stated that Matter of Filfiley (supra) was correctly decided under the facts of that case because the decedent’s ratification of the withdrawal could be inferred from her imminent death and her close relationship with the surviving tenant. Judge Fuchsberg implied that the survivor would prevail in many matters but he rejected a rigid rule in favor of the survivor because it would permit the survivor to prevail "no matter how unconscionable” and "excessive [the] withdrawal” (Matter of Kleinberg v Heller, 38 NY2d, supra, at 844-845).
A combination of saddling the survivor with a heavy burden of proof and muting his own statements in support of his claim under the "Dead Man’s Statute” has made victory more elusive for the survivor than envisioned by Judge Fuchsberg (see, Matter of Hamburg, 151 Misc 2d 1034). Nevertheless, to the extent that the Kleinberg rule can be considered a form of punitive damages, Judge Fuchsberg’s limitation on the rule to "unconscionable” conduct is in accord with the general rule that punitive damages should only be imposed when expressly awarded by statute (see, CPLR 4018), there has been a fraud " 'aimed at the public generally’ ” (Vinlis Constr. Co. v Roreck, 27 NY2d 687, 689) or, when warranted by sufficiently gross or wanton conduct (PJI 2:278).
*284 A Totten trust account differs from a joint account in that the beneficiary of the Totten trust account cannot make any withdrawals during the depositor’s lifetime while each joint tenant has the power to make withdrawals from the account. Thus, there is a surreptitious element to an unauthorized excessive withdrawal from a joint account which is not present with regard to withdrawals from Totten trust accounts in the absence of a forgery or some other type of chicanery. Moreover, there is no rule that a beneficiary under a prior will forfeits her legacy because she has offered for probate a later will, leaving the entire estate to her, which was denied probate on the ground that it was not established that decedent had testamentary capacity. Similarly, it can forcefully be argued that respondent should not forfeit her rights under the Totten trust accounts (decedent’s poor man’s will) merely because decedent signed a withdrawal slip at a time when respondent has not established that he had sufficient capacity to make a gift. If this were all that respondent had done, this court might very well have denied petitioner’s claim to the funds which apparently would have passed to respondent in approximately one month even if she had not made the withdrawals.
Here, however, the proof indicates that respondent’s withdrawals essentially left decedent penniless and deprived other designated beneficiaries of Totten trust accounts of the funds that should have passed to them by operation of law. Moreover, it must be inferred from respondent’s default that she could not present any evidence which, even when viewed charitably, might have supported a conclusion that decedent was competent when he executed the withdrawal slips. Lastly, it appears that she took control of all of decedent’s assets without the knowledge of decedent’s other children. This conduct makes all of the withdrawals, including the ones from the accounts of which she was the designated beneficiary, so "unconscionable” and "excessive” as to hold that she forfeited any rights that she had in these accounts as the surviving beneficiary of a Totten trust account (Matter of Kleinberg v Heller, 38 NY2d 836, supra). Consequently, petitioner is also entitled to recover the sum of $33,325.89, together with interest from the date of each withdrawal, from the two "in trust for” accounts for respondent.
[Portions of opinion omitted for purposes of publication.]