[921 NYS2d 161]

In the Matter of the Estate of SANDRA MURRAY, Deceased. JE-
ROME MURRAY, Respondent; KAREN B. MURRAY KLINE et al.,
Appellants.

Second Department, April 19, 2011

## APPEARANCES OF COUNSEL

*Ackerman, Levine, Cullen, Brickman & Limmer, LLP*, Great Neck (*John M. Brickman* of counsel), for appellants.

*Meyer, Suozzi, English & Klein, P.C.*, Garden City (*Robert N. Zausmer* of counsel), for respondent.

## OPINION OF THE COURT

BELEN, J.

These appeals concern the validity of a will executed subsequent to an irrevocable joint will and certain testamentary dispositions contained therein.

On December 20, 1993, the decedent, Sandra Murray (hereinafter the decedent), and her then-husband, Jerome Murray (hereinafter Jerome), executed a joint will which, among other things, bequeathed to the survivor of them the entire estate of the first of them to die, as well as property over which the decedent or Jerome had "power of disposal, whether owned jointly or severally," and appointed each spouse the executor of the other's estate (hereinafter the joint will). The joint will further provided that whatever remained after the death of the survivor would be distributed to a trust, with equal shares of the trust to be allocated among their grandchildren and one of their children, their daughter, Karen B. Murray Kline (hereinafter Karen). The joint will's terms state that it is "forever binding," and may be revoked or modified only by a writing subscribed by both parties and executed with the formality of a will.

Approximately eight years after their execution of the joint will and after approximately 50 years of marriage, the decedent and Jerome were divorced by judgment dated April 6, 2001. Several months before, in December 2000, apparently in anticipation of the divorce, the decedent and Jerome reaffirmed the joint will by executing a Marital Settlement Agreement (hereinafter the agreement), the terms of which were incorporated into the divorce judgment. The agreement stated, in pertinent part, that neither party would attempt to revoke the joint will, and provided quit claim deeds granting sole title of their Boca Raton condominium to Jerome and sole title of their Roslyn condominium to the decedent. No further action was taken by either the decedent or Jerome regarding the joint will.

On June 2, 2006, the decedent established the Sandra Murray 2006 Irrevocable Trust (hereinafter the trust), the corpus of which was her Roslyn condominium. The decedent and her son-in-law, Ivan O. Kline (hereinafter Ivan), were named as the trustees.

Article II, Section B, of the trust document states, in pertinent part, that upon the decedent's death, its principal is to be distributed

> "to such one or more persons out of a class composed of the [decedent's] former husband, Jerome Murray, and the [decedent's] descendants and spouses of the [decedent's] descendants on such terms as the [decedent] may appoint by a Will hereafter executed specifically referring to this power of appointment."

Subsequently, the decedent nominally exercised the rights of the "power of appointment" set forth in Article II, Section B, of the trust document through a one-paragraph will, executed on September 5, 2007 (hereafter the 2007 will). The 2007 will stated that it was not intended to modify or revoke the joint will, "which shall remain in full force and effect." Rather, its sole purpose was, pursuant to the power of appointment set forth in Article II, Section B, of the trust document, to provide for the trust to convey, upon the decedent's death, its corpus, i.e., the Roslyn condominium, in equal shares to the decedent's (and Jerome's) four children, Karen, Clifford Paul Murray, Debra S. Murray Wolther, and Lynn Murray Cooper.

Following the decedent's death on June 14, 2008, Jerome filed a petition for the probate of the joint will. On June 30, 2008, Jerome applied for preliminary letters testamentary to be issued to him, which the Surrogate's Court granted in an order dated July 15, 2008. On August 12, 2008, Jerome, as the preliminary executor of the decedent's estate, commenced a turnover proceeding pursuant to SCPA 2103 against, among others, his daughter, Karen, and her husband, Ivan (hereinafter together the Klines), seeking, inter alia, to direct Ivan, as trustee of the trust, to execute and deliver the deed to the Roslyn condominium to the decedent's estate.

In their answer to Jerome's petition, the Klines alleged, among other things, that the Roslyn condominium was no longer a part of the probate estate, as a will is not effective until the death of the testator, and that neither the joint will nor the 2007 will prohibited the decedent from making inter vivos gifts or transferring property during her lifetime. Thereafter, on August 25, 2008, Ivan, as trustee of the trust, commenced a proceeding for the probate of the 2007 will.

On September 5, 2008, the Klines filed objections to Jerome's appointment as executor of the decedent's estate. The Klines alleged that the decedent had already transferred her ownership interest in the Roslyn condominium to the trust on June 2, 2006, and, therefore, the property was neither a part of the decedent's probate estate nor subject to the terms of the joint will that Jerome propounded for probate. The Klines also alleged that Jerome had an "unwaivable . . . conflict of interest" that prevented him from administering the decedent's estate according to her 2007 will and, if the Surrogate's Court would allow Jerome to act as the decedent's executor regardless, his letters should be limited and he should be required to post a bond.

On September 18, 2008, Jerome filed objections to Ivan's petition for probate, claiming that the terms of the 2007 will violated the joint will and, therefore, the 2007 will should not be admitted to probate. On October 10, 2008, Jerome moved for summary judgment (1) dismissing Ivan's petition for the probate of the 2007 will, (2) dismissing the Klines' objections to his appointment as executor, and (3) on the petition in the turnover proceeding against the Klines, i.e., to direct Ivan to execute and deliver the deed to the Roslyn condominium to the decedent's estate.

Also on October 10, 2008, the Klines cross-moved for summary judgment (1) dismissing the turnover proceeding insofar as asserted against them on the ground that any property the decedent had either transferred during her lifetime to the trust, including the Roslyn condominium, or given to Karen, was not part of the probate estate, (2) dismissing Jerome's objections to Ivan's petition for the probate of the 2007 will, and (3) on their petition for the probate of the 2007 will.

In opposition to the cross motion, Jerome argued that although Jerome's and the decedent's estate plan did not restrict either of them from using or selling their assets during their lifetimes, it did restrict the manner in which they could dispose of their assets upon their deaths. Among other things, he stressed that ARTICLE SECOND of the joint will provided that upon the death of the first of them, "the entire estate of the one dying first and all property of which she or he has power of disposal, whether owned jointly or severally, is hereby given to the survivor."

The terms of ARTICLE SECOND of the joint will therefore create two categories of property that passed to the survivor, (1) any property comprising "the entire estate of the one dying first," and (2) "all property of which [the decedent or Jerome] has [the] power of disposal." Jerome asserted that even accepting the Klines' argument that the decedent transferred title to the Roslyn condominium to the trust, thereby placing such property outside the first category created by ARTICLE SECOND of the joint will, such property was nevertheless encompassed by the second category created by ARTICLE SECOND of the joint will. Specifically, Jerome asserted that because the decedent, pursuant to the trust document, retained upon her death the power of appointment regarding the disposal of the Roslyn condominium, and exercised such power in her 2007 will by directing that upon her death, the trust was to convey such property to their

four children, in equal shares, the decedent retained power of disposal over the Roslyn condominium. Accordingly, because the decedent retained power of disposal over the Roslyn condominium, the 2007 will was, in effect, a nullity, because it did not exercise the decedent's power of appointment in favor of Jerome, as required by ARTICLE SECOND of the joint will and, accordingly, that branch of the Klines' cross motion which was for summary judgment on their petition for the probate of the 2007 will should be denied.

In a decision dated March 17, 2009, the Surrogate's Court found that Jerome was entitled to summary judgment on the petition in the turnover proceeding "to the extent of a direction that Ivan as co-trustee reconvey the [Roslyn condominium] to the estate." The Surrogate's Court held that Jerome was entitled to summary judgment on the petition for the probate of the joint will, dismissing the Klines' objections to Jerome's appointment as executor, and dismissing Ivan's petition for the probate of the 2007 will.

In an order dated June 17, 2009, the Surrogate's Court, in effect, granted Jerome's petition for the probate of the joint will and, in effect, granted that branch of Jerome's motion which was for summary judgment on the petition in the turnover proceeding, directing Ivan, as trustee of the trust, to execute and deliver the deed to the Roslyn condominium to Jerome, as executor of the decedent's estate. The Surrogate's Court also, in effect, granted those branches of Jerome's motion which were for summary judgment dismissing the Klines' objections to his appointment as executor, as well as Ivan's petition for the probate of the 2007 will.

By decree also dated June 17, 2009, the Surrogate's Court admitted the joint will to probate, denied admission of the 2007 will to probate, dismissed the Klines' objections to Jerome's appointment as executor of the decedent's estate, revoked Jerome's preliminary letters testamentary, and directed that letters testamentary be issued to Jerome.

The Klines appeal from so much of the decree as dismissed their objections to Jerome's appointment as executor of the decedent's estate and denied Ivan's petition for the probate of the 2007 will, and from so much of the order as awarded Jerome summary judgment on the petition in the turnover proceeding, and as, in effect, awarded Jerome summary judgment dismissing their objections to Jerome's appointment as executor and dismissing Ivan's petition for the probate of the 2007 will.

■ The Surrogate's Court found that Jerome established his prima facie entitlement to judgment as a matter of law based on ARTICLE SECOND of the joint will, which, it indicated, granted "all property of which she or he has power of disposal" to the surviving spouse upon the other's death. The Surrogate's Court determined that regardless of whether the decedent had transferred her ownership interest in the Roslyn condominium to the trust, such property was subject to the terms of ARTICLE SECOND of the joint will because she retained the power of appointment pursuant to the trust document and the "power of disposal" pursuant to the 2007 will over the Roslyn condominium. As such, the decedent was bound by the terms of the joint will and could only bequeath title to the Roslyn condominium to Jerome. Since the decedent's testamentary disposition in her 2007 will violated the terms of the joint will, the Surrogate's Court determined that Jerome was entitled to summary judgment on the petition in the turnover proceeding and, accordingly, directed Ivan to execute and deliver the deed to the Roslyn condominium. We agree with that determination.

In a turnover proceeding pursuant to SCPA article 21, to be entitled to summary judgment, the petitioner must make a prima facie showing that the subject property belonged to the decedent at the time of his or her death (see Matter of Coviello, 78 AD3d 696, 698 [2010]; Matter of Rappaport, 66 AD3d 1032 [2009]; Matter of Kelligrew, 63 AD3d 1064, 1065 [2009]).

To meet his burden, Jerome relies on ARTICLE SECOND of the joint will, which provides, in pertinent part, that upon the death of the decedent or Jerome, "the entire estate of the one dying first and all property of which she or he *has power of disposal, whether owned jointly or severally*," will be given to the survivor (emphasis added). Jerome argues that the decedent's power of appointment set forth in Article II, Section B, of the trust document demonstrated that she retained "power of disposal" over the Roslyn condominium and, thus, pursuant to ARTICLE SECOND of the joint will, he is entitled to that property.

"A validly executed joint will is a proper and legally tenable means of effecting a testamentary disposition of property" (*Matter of Covert*, 97 NY2d 68, 73-74 [2001]; see *Glass v Battista*, 43 NY2d 620, 623-624 [1978]; *Matter of Diez*, 50 NY 88 [1872]). Generally, "a will is inoperative and wholly ineffective until the death of [a] testator" (*Matter of Fabbri*, 2 NY2d 236, 239 [1957]; see *Blackmon v Estate of Battcock*, 78 NY2d 735, 739 [1991] ["(e)ven after due execution of a will, testators also retain unfet-

tered authority to dispose of all property during their lifetimes"]). However, where a joint will is at issue, when one of the testators dies, the survivor is bound by the terms of the joint will and is prohibited from making a testamentary disposition or inter vivos gift that would defeat the purpose or plan of the joint will, "for equity would be ill-served if, after one party had honored the agreement, the other party, having reaped its fruit, were at liberty to uproot it" (*Glass v Battista*, 43 NY2d at 624; *see Rastetter v Hoenninger*, 214 NY 66, 73 [1915]; *cf. Schwartz v Horn*, 31 NY2d 275, 280 [1972]).

"[T]estamentary instruments are strictly construed so as to give full effect to the testator's clear intent" (*Matter of Covert*, 97 NY2d at 74; *see Matter of Bieley*, 91 NY2d 520, 525 [1998]; *Matter of White*, 65 AD3d 1255, 1257 [2009]), "as far as is consonant with principles of law and public policy" (*Matter of Fabbri*, 2 NY2d at 240; *see Matter of Rodrigues*, 33 AD3d 926, 927 [2006]). The testator's intent "must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed" (*Matter of Fabbri*, 2 NY2d at 240; *see Matter of Brignole*, 32 AD3d 538 [2006]; *Matter of Ramdin*, 11 AD3d 698, 699 [2004]). Thus, "[i]f the court upon reading the will in this setting discerns a dominant purpose or plan of distribution, the individual parts of the will must be read in relation to that purpose and given effect accordingly" (*Matter of Fabbri*, 2 NY2d at 240; *see Matter of Carmer*, 71 NY2d 781, 785-786 [1988]; *Matter of White*, 65 AD3d 1255, 1257 [2009]). Notably, this principle of interpretation "is true despite the fact that a literal reading of the portion under construction might yield an inconsistent or contradictory meaning because of the use of awkward language inadvertently or carelessly chosen" (*Matter of Fabbri*, 2 NY2d at 240; *see Matter of Bieley*, 91 NY2d at 525 ["where the entire will manifests a general testamentary scheme, it is the duty of the courts to carry out the testator's purpose, notwithstanding that general rules of interpretation might point to a different result" (internal quotation marks omitted)]; *Blackmon v Estate of Battcock*, 78 NY2d at 740 ["In the absence of an express provision in the agreement or factors far more substantial within the four corners of the settlement agreement itself from which a judicial inference could comfortably and properly be drawn, courts should not innovate for parties after the fact"]).

As Jerome correctly concedes, the decedent's ability to dispose of her assets during her lifetime was unfettered by that part of

ARTICLE SECOND of the joint will that bequeathed to the survivor of each of them the "entire estate" of the one to die first. Because the joint will makes no specific bequests, any inter vivos gifts made by the decedent or Jerome would not have necessarily defeated their intent that the survivor receive the entire estate of the first to die (*see Rastetter v Hoenninger*, 214 NY at 73; *cf. Schwartz v Horn*, 31 NY2d at 280). As such, during her lifetime, the decedent could have transferred title to the Roslyn condominium outright or directly to her four children without violating the terms of the joint will (*see Blackmon v Estate of Battcock*, 78 NY2d at 740).

The crux of the parties' dispute then, is that part of ARTICLE SECOND of the joint will which provides, in pertinent part, that (in addition to receiving title to the entire estate of the first of them to die), the survivor was also to receive title to all property over which Jerome or the decedent, upon his or her death, had "power of disposal, whether owned jointly or severally." The crucial analysis is whether the Klines are correct that any power of disposal over the Roslyn condominium the decedent possessed pursuant to Article II, Section B, of the trust document, is of no moment since she had previously transferred title to such property to the trust and, thus, she no longer owned such property "jointly or severally."

At the time they executed the joint will in 1993, Jerome and the decedent had been married for nearly 43 years. As Jerome and the decedent did not separate until 1997, it is reasonable to infer, as we do, that at the time they executed the joint will, Jerome and the decedent intended to remain married and to bequeath to each other their respective estates as well as all properties over which they retained power of disposal. Given the circumstances in which the joint will was executed—namely, a long-standing marriage—the phrase "whether owned jointly or severally" was not, as the Klines contend, intended to qualify the "power of disposal" phrase, but instead intended to expand the scope of the requisite power of disposal to include properties Jerome and the decedent owned jointly or severally with each other. A sympathetic reading of the entire joint will strengthens our conclusion, as the first testamentary disposition, in ARTICLE SECOND, leaves "the entire estate of the one dying first and all property of which she or he has power of disposal" to the survivor, while the second, in ARTICLES THIRD and FOURTH, bequeathed their respective estates "and all property of which we or either of us has power of disposal" to a trust to divide the

residuary estate into equal shares for Karen and their lawful grandchildren, should they die "at the same time, or as a result of a common accident" (*see Matter of Brignole*, 32 AD3d at 539).

Further, even after Jerome and the decedent had entered into divorce proceedings, they reaffirmed the validity of the joint will in the agreement they executed in December 2000; this strengthens our conclusion that they never strayed from the testamentary disposition set forth in their joint will. We further note that to accept the Klines' argument would ignore the decedent's intent when she executed the joint will in 1993, an intent she reaffirmed when she executed the agreement in December 2000, and improperly substitute it with her intent when she executed the 2007 will (*see Blackmon v Estate of Battcock*, 78 NY2d at 740).

Accordingly, since, in the turnover proceeding, Jerome established that the Roslyn condominium was a part of the decedent's estate because she retained power of disposal over it pursuant to the trust document and, in opposition, the Klines failed to raise a triable issue of fact, the Surrogate's Court properly awarded Jerome summary judgment on the petition in the turnover proceeding.

Turning to Ivan's petition for the probate of the 2007 will, a will must be admitted to probate "[i]f it appears that the will was duly executed and that the testator at the time of executing it was in all respects competent to make a will and not under restraint" (SCPA 1408 [2]; *see Matter of Kumstar*, 66 NY2d 691, 692 [1985]; *Matter of Imperato*, 67 AD3d 909 [2009]). Here, the Klines established their prima facie entitlement to judgment as a matter of law by providing an affidavit from the attesting witnesses acknowledging the validity of the 2007 will and its execution.

In opposition, Jerome failed to raise a triable issue of fact. In opposing the Klines' cross motion, Jerome principally contended that the 2007 will should not be admitted to probate because ARTICLE FIFTH of the joint will specifically provided that it was irrevocable and that the joint will could only be revoked or modified by a writing subscribed by both of them and executed by both of them with the formality of a will (*see* EPTL 13-2.1 [b]; *cf. Matter of Lubins*, 250 AD2d 850 [1998]).

As a general rule, a will is ambulatory in nature and revocable during the life of the testator (*see* EPTL 1-2.19 [a]; *Matter of Blackmon v Estate of Battcock*, 78 NY2d at 739; *Tutunjian v Vetzigian*, 299 NY 315, 319 [1949]; *Matter of Lubins*, 250 AD2d

at 851). While individuals may validly surrender their power of revocation, the law requires, as a threshold, a showing of clear and unambiguous evidence of the intent to surrender such right (*see* EPTL 13-2.1 [b]; *Matter of Blackmon v Estate of Battcock*, 78 NY2d at 739; *Oursler v Armstrong*, 10 NY2d 385, 392 [1961]; *Tutunjian v Vetzigian*, 299 NY at 320; *Matter of Thompson*, 309 AD2d 1013, 1015 [2003]; *Matter of Lubins*, 250 AD2d at 851-852; *see also Matter of American Comm. for Weizmann Inst. of Science v Dunn*, 10 NY3d 82, 92 [2008]). Even if we agree with Jerome that ARTICLE FIFTH of the joint will satisfies that threshold showing, that article does not preclude admitting the 2007 will to probate, since a will may not be denied probate on the ground that the testator previously "bound himself to a different disposition of [his] property by contract" (*Matter of Higgins*, 264 NY 226, 229 [1934] [discussing former Surrogate's Court Act § 144, the predecessor statute to SCPA 1408]; *see* SCPA 1408 [2]). Put differently, the enforceability of the terms of a will does not affect the "will's status as a legal instrument" (*Matter of Coffed*, 46 NY2d 514, 519 [1979]), nor does it determine if the will should be admitted to probate (*id.*). Rather, in light of ARTICLE FIFTH of the joint will, admitting the 2007 will to probate may render the decedent's estate vulnerable to an action against it by Jerome, for example, seeking to impose a constructive trust upon her estate or for an accounting (*see Matter of Coffed*, 46 NY2d at 519; *Oursler v Armstrong*, 10 NY2d at 391; *Matter of Higgins*, 264 NY at 229-230; *Olin v Lenoci*, 119 AD2d 739 [1986]).

Since the Klines satisfied their prima facie burden and Jerome did not raise any triable issue of fact in opposition, the Klines were entitled to summary judgment dismissing Jerome's objections to Ivan's petition for the probate of the 2007 will and on their petition for the probate of the 2007 will. We recognize that by being awarded summary judgment in the turnover proceeding, Jerome obtains title to the Roslyn condominium and, thus, the 2007 will is admitted to probate, but its terms are not enforceable, since the sole purpose of the 2007 will was to bequeath the Roslyn condominium to the decedent's four children, including Karen. Ironically, as correctly observed by Jerome, had the decedent simply gifted or even sold the Roslyn condominium during her lifetime, the joint will would not have served as a bar to its transfer.

The Klines' remaining contentions are without merit.

The appeal from so much of the order as granted those branches of Jerome Murray's motion which were, in effect, for

summary judgment dismissing the objections of Karen B. Murray Kline and Ivan O. Kline to the appointment of Jerome Murray as executor and dismissing Ivan O. Kline's petition for the probate of the will of Sandra Murray dated September 5, 2007, must be dismissed because the right of direct appeal therefrom terminated with the entry of the decree (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from those portions of the order are brought up for review and have been considered on the appeal from the decree (*see* CPLR 5501 [a] [1]). Accordingly, the order is affirmed insofar as reviewed, the decree is modified, on the law, by deleting the provision thereof denying Ivan O. Kline's petition for the probate of the will of Sandra Murray dated September 5, 2007, and substituting therefor a provision granting that petition, and as so modified, the decree is affirmed insofar as appealed from, and the order dated June 17, 2009 is modified accordingly.

MASTRO, J.P., SKELOS and ROMAN, JJ., concur.

Ordered that the appeal from so much of the order as granted those branches of Jerome Murray's motion which were, in effect, for summary judgment dismissing the objections of Karen B. Murray Kline and Ivan O. Kline to the appointment of Jerome Murray as executor and dismissing Ivan O. Kline's petition for the probate of the will of Sandra Murray dated September 5, 2007, is dismissed, without costs or disbursements; and it is further,

Ordered that the order is affirmed insofar as reviewed, without costs or disbursements; and it is further,

Ordered that the decree is modified, on the law, by deleting the provision thereof denying Ivan O. Kline's petition for the probate of the will of Sandra Murray dated September 5, 2007, and substituting therefor a provision granting that petition; as so modified, the decree is affirmed insofar as appealed from, without costs or disbursements, and the order dated June 17, 2009 is modified accordingly.